RECEIVED
IN LAKE CHARLES, LA

DEC 07 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND AND OIL COMPANY, LIMITED LIABILITY COMPANY | : | DOCKET NO. 2:09 CV 01100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORPORATION, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

On July 1, 2009, the plaintiffs filed their original complaint. Exxon Mobil Corporation ("ExxonMobil") responded by filing a Motion for a More Definite Statement [doc. 17]. The plaintiffs amended their complaint [doc. 10] on September 14, 2009. ExxonMobil filed Motion Adopting the Prior Motion for a More Definite Statement [doc. 20] asserting that the amended complaint did not cure the defects raised in the Motion to Dismiss. Sweet Lake Land and Oil Company ("Sweet Lake") opposed [doc. 22] ExxonMobil's motion. ExxonMobil filed a Reply [doc. 25] and Sweet Lake filed a Sur-reply [doc. 35].

Noble Energy ("Noble") filed a Partial Motion to Dismiss for Failure to State a Claim [doc. 19], raising the same issues and essentially the same arguments that were raised by ExxonMobil. Sweet Lake opposed [doc. 25] the motion. Noble filed a Reply [doc. 29].

Vernon E. Faulconer, Inc. ("Faulconer") filed a Motion [doc. 26] for More Definite Statement Pursuant to Rule 12(e) and Failure to State Claim Upon Which Relief May be Granted Pursuant to Rule 12(b)(6), and/or A Substitute Motion for Partial Summary Judgment Pursuant to

Rule 56. This motion was opposed [doc. 36] by Sweet Lake.

## Rule 12(e) Standard

FED. R. CIV. P. 12(e) motions should be granted when the pleadings are so unclear that drafting a response to them is impossible. If the pleading is so vague or ambiguous that a responsive pleading is impossible, the party can move the court for an order directing the pleader to serve a more definite statement.

## Rule 12(b)(6) Standard

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). To avoid dismissal under a Rule 12(b)(6) motion, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Id.* at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)..." *Id.* at 1965. Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

## Attached Affidavit

ExxonMobil attached an affidavit by the Secretary Bohlinger of the Department of Environmental Quality ("DEQ") to the Rule 12(b)(6) motion. In a footnote, ExxonMobil suggests that this court take judicial notice of the affidavit as it is a public DEQ record which was filed in the

*Corbello v. Iowa Production*[1] case.

"In ruling on a Rule 12(b)(6) motion, the court may consider the complaint itself and on a very few other categories of materials. The courts may consider exhibits attached to the complaint, documents that the complaint incorporates by reference, (provided they are both undisputed and central to the pleaded claims), and materials of which the court may take judicial notice." Federal Civil Rules Handbook 2009, Backer-McKee, Janssen, Corr, p. 437. Other than in this context, if a court is to consider such an attached affidavit, the character of the motion will change to a summary judgment motion.

Federal Rules of Evidence Rule 201 states:

**(a) Scope of rule.** This rule governs only judicial notice of adjudicative facts.

**(b) Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**(c) When discretionary.** A court may take judicial notice, whether requested or not.

**(d) When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

**(e) Opportunity to be heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

**(f) Time of taking notice.** Judicial notice may be taken at any stage of the proceeding.

**(g) Instructing jury.** In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury

---

[1] 02-0826 (La. 2/25/03), 850 So. 2d 686

that it may, but is not required to, accept as conclusive any fact judicially noticed. Federal Rules of Evidence Rule 201, 28 U.S.C.A.

Sweet Lake objects to the introduction of the Bohlinger affidavit.[2] Sweet Lake argues that the affidavit is irrelevant, not authentic, not a DEQ public record, and an improper attempt to use evidence to influence this court's ruling on the Rule 12(b)(6) motion. The court agrees with Sweet Lake that the subject of Bohlinger's affidavit, DEQ's policy that predates Act 312, *supra*, which removed groundwater contaminated by oilfield operations from the DEQ's jurisdiction, is irrelevant to this proceeding. Exxon has not proven authenticity of the affidavit, nor have they established that this affidavit is a record of the DEQ. Accordingly, this court will not consider the Bohlinger affidavit when considering the Rule 12(b)(6) motion.

## Analysis

Sweet Lake is the owner of certain property in Cameron Parish, Louisiana.[3] The defendants conducted oil and gas operations, and other commercial operations on the property.[4] Some or all of the defendants' oil and gas operations were conducted pursuant to leases, including mineral leases, and other agreements which provided that the defendants would be responsible for all damages to the property or that the defendants would restore the property.[5] Sweet Lake alleges that the defendants' operations on the property contaminated the soil and groundwater with produced water, drilling muds, technology enhanced naturally occurring radioactive materials, hydrocarbons, metals,

---

[2] Attached as an exhibit to the Memorandum in Opposition to the motion by ExxonMobil.

[3] Amended Complaint ¶5.

[4] Amended Complaint ¶6.

[5] Amended Complaint ¶7.

4

and other toxic and/or hazardous substances, wastes and pollutants.[6]

Faulconer asserts in the Rule 12(e) motion that Sweet Lake's Amended Complaint has not been served on Faulconer. Faulconer seeks to compel Sweet Lake to amend the complaint to plead its claims with particularity "because the claims are presently so vague or ambiguous that Faulconer cannot reasonable [sic] prepare a response."[7] Although not served with the Amended Complaint, Faulconer viewed the pleading on PACER and argues that the amendments exacerbated rather than ameliorated the claimed deficiencies.

Great care must be used in passing on a motion for definite statement. In view of the great liberality of F.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss. It is to be noted that a motion for more definite statement is not to be used to assist in getting the facts in preparation for trial as such. Other rules relating to discovery, interrogatories and the like exist for this purpose. *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).

Sweet Lake notes in the Opposition to the motion that it has pleaded that Sweet Lake, at all material times, has owned property[8] that was polluted by the defendants' oil and gas operations, as well as the specific well operated by Faulconer on Sweet Lake's property. *See* Amended Complaint ¶¶5, 8. The complaint identifies how Faulconer's operations caused the pollution, i.e., Faulconer's storage and disposal of produced water and other substances in pits, abandonment of equipment, and

---

[6] Amended Complaint ¶10.

[7] Faulconer Motion, p. 1.

[8] The property is identified by section, township, range and parish.

leaks and discharges from Faulconer's oil and gas facilities. *See* Amended Complaint ¶¶10-11, 13, 15, 19, 21, and 25. The complaint further identifies the types of claims and potentially viable theories upon which relief from Faulconer is sought, i.e., breach of contract, negligence, nuisance, trespass, punitive damages, unjust enrichment, and breach of the duty of good faith. *See* Amended Complaint ¶¶ 6, 12-13, 15, 19, 23, 25-27, and 29-30. The complaint specifies the damages it seeks from Faulconer relative to the alleged pollution caused by oil and gas operations. *See* Amended Complaint ¶¶ 23, 26, 32, 33, and 34. Considering the notice requirement of Rule 8, this Amended Complaint adequately sets forth a claim and provides the respondents with fair notice of its basis. The Motion for A More Definite Statement pursuant to Rule 12(e) will be denied.

Sweet Lake alleges that the defendants concealed certain facts regarding the safety of its operations. The first issue that the defendants[9] assert in their Rule 12(b)(6) motions is that Sweet Lake should either amend the complaint to plead with particularity or amend the complaint to clarify that it is not making fraud claims. In its opposition to the motion, Sweet Lake unequivocally stated that it is not asserting a cause of action based upon fraud. Based upon this assertion, the Motion to Dismiss based upon failing to plead fraud with particularity is moot.

The second issue raised by the defendants concerns damages for restoring groundwater. The defendants move to dismiss Sweet Lake's claim for private monetary damages based on the cost of remediation for alleged damage to groundwater. In support of the motion, the defendants cite *Inabet v. Exxon*, 642 So.2d 1243 (La. 1994). In *Inabet*, an oyster lessee brought an action against Exxon, which held a predating adjacent and overlapping surface lease and canal right-of-way. Inabet sought

---

[9] For the purpose of this ruling, "the defendants" shall refer to ExxonMobil, Noble and Faulconer, unless a specific defendant is mentioned by name.

to recover damages to oyster leases caused by company's dredging operations. The most significant item of damages awarded by the trial court was the cost of restoring the water bottoms to their original condition by removing the spoil bank and by reconstructing the marsh mat with a six-inch mat of shells over the entire damaged area of more than twenty-six acres. Exxon contended that the right to recover restoration costs of the water bottoms belonged to the owner, the State, and that the plaintiff had no right of action to such recovery. Inabet based his right of action on La.Rev.Stat. 56:423 B(1) which provides that a "lessee of oyster beds or grounds ... shall have the right to maintain an action for damages against any person ... causing wrongful or negligent injury or damage to the beds or grounds under lease to such lessee." La.Rev.Stat. 56:423 B(1) recognizes an oyster lessee's right to recover his own damages for injury to his oyster beds.

The ruling in *Inabet* was factually specific. The property damage to be restored (or rebuilt) was the destruction of the marsh mat which provided the foundation for the seed oysters. However, the plaintiff had simply placed the seed oysters on the water bottoms; he did not construct the marsh mat on which the oysters were planted or build a shell reef for the planting. The plaintiff took the bottoms, with the existing marsh mat, as he found them in the condition that existed at the time of the original lease. Considering these factors, the court held that the party with the real and actual interest in restoring or rebuilding the damage caused by the dredging in this case was the owner rather than the oyster lessee. The court reasoned that the owner of water bottoms is normally the party with the right of action to recover the costs of restoration. But, in some situations, as in a long-term lease in which the lessee has made significant improvements, the lessee may have a greater interest than the owner in restoring damaged property. *Inabet* did not present such a situation. The court concluded that if the oyster lessee were allowed to recover damages for injury to the water

bottoms, the lessee would not be obliged to restore the water bottoms and could use the money as he pleased, leaving the owner (the State) without even the opportunity to accomplish the restoration.

*Inabet* is easily distinguished. The case at bar concerns groundwater restoration, not water bottoms. The case at bar involves potential damages pursuant to the Mineral code, not La.Rev.Stat. 56:423 B(1), regulating oyster beds.

Although predating Act 312, *Corbello v. Iowa Prod.*, 02-0826 (La.2/25/03), 850 So.2d 686, is factually similar. The plaintiffs in *Corbello* were mineral lessors who sued an oil company which had held mineral lease. One of the remedies sought by the *Corbello* plaintiffs was damages for aquifer contamination. In *Corbello*, the Louisiana Supreme Court recognized "the need for a comprehensive body of legislation wherein the state would oversee the problem in oilfield waste sites." *Id.*, 850 So.2d at 699. It was the holding in *Corbello* that prompted the Louisiana Legislature to adopt Act 312 which seeks to ensure that the property that is environmentally damaged is actually remediated. Act 312 exempts from its application all cases in which a contractual agreement exists between the parties that contains a remediation provision that exceeds state standards. La.Rev.Stat. §§ 31:29(A) and (H). It is only when no such proviso exists, that Act 312 mandates the state's involvement. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So.2d 16, 36, 2007-2371 (La. 7/1/08), (La., 2008).

The property owner in *M.J. Farms, id.*, brought an action against oil and gas companies that had conducted exploration on his property, alleging that the exploration had caused environmental damages to property. The property owner sought restoration of his property, costs, attorney fees, and damages for loss of civil fruits. The Seventh Judicial District Court, Parish of Catahoula, Kathy Johnson, J., entered a judgment declaring the statute unconstitutional and an appeal was taken. The

Louisiana Supreme Court, 956 So.2d 573, reversed and remanded. On remand, the Seventh Judicial District Court, Parish of Catahoula, Kathy Johnson, J., entered judgment again declaring the statute unconstitutional. The matter was appealed once again. Upon review, the Louisiana Supreme Court held that the statute was constitutional.

It is interesting to note that M.J. Farms argued that it filed suit before the enactment of Act 312 and therefore the retroactive application of Act 312 disturbed its vested rights. M.J. Farms argued that Act 312 was clearly substantive in nature because it sought to alter the rights of a private landowner to receive a full and complete recovery for their private injury to their property. M.J. Farms explained that under the prior law an oil field polluter was always obligated to pay the full amount of private law damages to a landowner. If the oil field polluter would also be found liable for violations of public law, it would receive a dollar-for-dollar credit for the amounts paid to the landowner as provided by La.Rev.Stat. § 30:89.1. According to M.J. Farms, Act 312 of 2006 changed the order of priorities in payment, insofar as the award received by the landowner is to be deposited in the registry of the court and used to pay first for the restoration plan developed by the Louisiana Department of Natural Resources ("LDNR"). In other words, under prior law it was the landowner first and the State second, whereas "under Act 312 it is the State and the public interest first and the landowner comes second." *Id.* at 23.

In contravention in *M.J. Farms*, Exxon contended that Act 312 did not divest the plaintiff of any substantive vested rights, and further argued that Act 312 merely provided a procedure through which these rights are to be asserted. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So.2d at 32.

LSA-R.S. 30:29(H) provides that:

> H. This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may be required in accordance with the terms of an express contractual provision. Any award granted in connection with the judgment for additional remediation is not required to be paid into the registry of the court. This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease.

Although there are few cases discussing La.R.S. 30:29 ( after the 2006 amendment), there are a few that aid the court in this determination. In *Tensas Poppadoc, Inc. V. Chevron, U.S.A.*, 10 So.3d 1259 (La.App. 3 Cir. 5/6/09), the underlying case arose from a suit for property damage that allegedly occurred as the result of oil and gas operations. The matter was tried and the jury rendered a verdict finding that Chevron breached its surface lease. The jury awarded the plaintiff damages of one million dollars for remediation. Pursuant to R.S. 30:29, the matter was then sent to the LDNR for consideration of remediation plans.

Likewise, in *Germany v. ConocoPhillips Company*, 980 So.2d 101 (La.App. 3 Cir. 3/5/08), the landowners sued the oil and gas companies to recover for contamination to their property. The issue on appeal was whether the district court should have allowed a bifurcated trial to determine liability and damages with an intervening determination by DNR.

Although *Gaidry v. Union Oil Co.*, 2009 WL 2765814 (E.D.La. 8/27/09) involved a question of the *Burford*[10] abstention, individual and corporate landowner plaintiffs filed suit against oil companies for remediation for damages arising from oilfield operations.

---

[10] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The abstention doctrine states that a sound respect for the independence of state action requires the federal equity court to stay its hand when the issue is one of great sensitivity and public importance to the state.

10

LSA-R.S. 30:2015.1 provides that:

A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources of the state, including water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy.

B. Notwithstanding any law to the contrary, ***upon the filing of any litigation, action, or pleading by any plaintiff*** in the principal demand, or his otherwise making a judicial demand which includes a claim to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, such plaintiff filing same shall provide written notice by certified mail, return receipt requested, which notice shall contain a certified copy of the petition in such litigation, to the state of Louisiana through the Department of Environmental Quality. To the extent that any such litigation or action seeks to recover for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, the Department of Environmental Quality, in accordance with its respective areas of constitutional and statutory authority and regulations adopted pursuant thereto, shall have the right to intervene in such litigation or action in accordance with the Louisiana Code of Civil Procedure. The department shall not have the right to independently assert a plea for damages to usable ground water beyond that stated by the plaintiff in the principal demand. However, nothing in this Section shall diminish the authority of the department from independently bringing any civil or administrative enforcement action. No judgment or order shall be rendered granting any relief in such litigation, nor shall the litigation be dismissed, without proof of notification to the state of Louisiana as set forth in this Subsection. (Emphasis added).

La. R.S. 30:2015.1 requires agency oversight of any private claims for public aquifer remediation and for the LDEQ and LDNR to intervene in private lawsuits. It does not bar private lawsuits for groundwater remediation. LAPRAC-ENV §4:57. In fact, 30:2015.1(B) states that the DEQ shall not have the right to independently assert a plea for damages to usable groundwater beyond that stated by the plaintiff in the principal demand.

This Rule 12(b)(6) motion raises the issue of whether Sweet Lake raises "a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. It is clear from a plain

11

reading of Act 312 that Sweet Lake may seek damages for groundwater remediation. The remedies available under Act 312 are an issue for a later date. Accordingly, the defendants' Motions to Dismiss for failure to state a claim for groundwater remediation will be denied.

An issue raised solely by Faulconer is a motion for a more definite statement relating to ¶¶ 12 and 28 of the Amended Complaint in which Sweet Lake alleges that the defendants are "obligated under the terms of the leases, other contracts and by law" to restore the property. Faulconer asserts that Sweet Lake has made claims for both breach of contract, breach of standards imposed by the Mineral Code, and tort duties breached by the defendants. In *Corbello, id.*, the Louisiana Supreme Court held, as a matter of contract interpretation, that damage clauses affirmatively requiring restoration of damaged property are enforceable. Faulconer argues that Sweet Lake should therefore be required to identify the specific contracts underlying their allegations. These contracts are subject to discovery and their terms will speak for themselves. Faulconer has sufficient notice under the Amended Complaint to file responsive pleadings. This motion for a More Definite Statement will be denied.

Lastly, Faulconer argues that Sweet Lake's request for a mandatory injunction compelling the defendants to remove the contamination does not state a claim upon which relief can be granted.

Sweet Lake alleges that Faulconer conducted operations pursuant to contracts that contain obligations to restore the property or which required it to be responsible for all damages, and that Faulconer breached those agreements. Amended Complaint ¶¶ 7, 12, and 19. Sweet Lake requested a mandatory injunction in the event that one award of damages will be inadequate to remediate the land. Amended Complaint ¶24.

Faulconer submits that La.R.S. 30:29 (Act 312 of 2006) is the exclusive remedy to redress

the remediation of the alleged environmental pollution and the Act does not provide for injunctive relief. Sweet Lake counters that La.R.S. §30.29H, *id.*, expressly permits the owner of the land to pursue any judicial remedy for environmental damage other than as limited within that statute. The court in *Tensas Poppadoc*, held that Act 312 does not limit a landowner's recovery to the award determined by the administrative agency and allowed a mandate to issue requiring the trial court judge to render a partial final judgment as to the parties that had not been found liable prior to the proceedings before the DNR. Accordingly, Sweet Lake's Amended Complaint requesting a mandatory injunction states a claim upon which relief can be granted and Faulconer's motion will be denied.

Lake Charles, Louisiana, this 7 day of December, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE