UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND AND OIL COMPANY, LLC. | : | DOCKET NO. 2:09-CV-01100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORPORATION, ET AL | : | MAGISTRATE JUDGE KAY |

**MEMORANDUM ORDER**

For the reasons stated herein, the [doc. 103] motion of defendant Exxon Mobil Corporation and ExxonMobil Oil Corporation ("Exxon") to sever and stay proceedings is hereby DENIED and the motion of plaintiff The Sweet Lake Land and Oil Company ("Sweet Lake") to stay the Louisiana Department of Natural Resources ("DNR") Compliance Orders Nos. E-I & E-11-0635, E-I & E-11-0636, and E-I & E-11-0637 [doc. 133] is hereby GRANTED.

**Facts and Procedural History**

On July 1, 2009, Sweet Lake filed suit against defendant Exxon, Vernon E. Faulconer, Inc. ("Faulconer"), Noble Energy, Inc. ("Noble"), and Texas Eastern Skyline oil Company ("Skyline"). Doc. 1. Plaintiff claims damages sustained by its property allegedly caused by defendants' "oil and gas operations, and other commercial operations" on the plaintiff's property. Doc. 1, p. 2. Plaintiff seeks compensation for the cost to evaluate and clean up the property, diminution in value of the property it claims

will result regardless of the clean up, lost revenues, exposure to potential liability to "the government, neighbors and others," as well as additional unspecified damages.  Doc. 1, p. 7.  Alternative plaintiff seeks a mandatory injunction compelling defendants to remove the contamination from the property.  *Id.*  None of the defendants has admitted responsibility for any alleged contamination on plaintiff's property.  See Doc. 51 (Answer of Noble), Doc. 52 (Answer of Exxon), Doc. 55 (Answer of Skyline), and Doc. 58 (Answer of Faulconer).

On June 10, 2011, Exxon filed a Motion to Sever and a Motion to Stay.  Doc. 103. Through this motion Exxon seeks severance of the claims relating to plaintiff's property situated in Sections 7 and 8, Township 12 South, Range 7 West, Cameron Parish, Louisiana, from the claims relating to plaintiff's property in Section 12, Township 12 South, Range 6 West, Cameron Parish, Louisiana.  Exxon argues that severance is warranted as there are no factual or legal connections between the operations on the two tracts.  Doc. 103, att. 1, p. 1.  Additionally Exxon argues that both severance and a stay of proceedings is for the claims involving Sections 7 and 8 properties as the DNR issued compliance orders involving remediation of those sections.  *Id.*  Exxon maintains that a severance of those claims and a stay of this proceeding related to those claims would "eliminate interference with the LDNR's regulatory authority with respect to the compliance orders that have been issued."  Doc. 103, att. 1, pp. 1-2.

With respect to those same compliance orders, plaintiff filed its own Motion to Stay on July 13, 2011.  Doc. 133.  Through its motion plaintiff asks this court to stay the compliance orders themselves as, plaintiff maintains, they compel the recipients of those orders to submit plans for remediation of the property that is the subject of this lawsuit.

Doc. 133, att. 1, p. 2. Sweet Lake's request to the DNR to stay its orders or to allow a hearing on the matter was denied, the DNR taking the position that "the right to challenge these orders or to request a stay to these orders lies solely with" the operators to whom the orders were issued. Doc. 133, att. 5.

## Law and Argument

*Exxon's Motion to Sever:*

A trial court may sever joined claims and order a separate trial of those claims for convenience, to avoid prejudice, or to expedite and economize. *See* Fed. R. Civ. P. 21; Fed. R. Civ. P. 42(b); Fed. R. Civ. P. 20(b). The decision whether to sever a claim lies within the broad discretion of the trial court. *Anderson v. Red River Waterway Com'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Applewhite v. Reichold Chem. Inc.,* 67 F.3d. 571, 574 (5th Cir. 1995). Severance will be refused if the court believes it will only result in delay, inconvenience, or added expense. 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1689 (3d ed. 2011); *see also Little v. Bellsouth Telecomm. Inc, 1995 WL 468256 (E.D. La. 1995).*

A trial court must balance those factors which weigh in favor of an order for separate trials against the convenience, economy, and speed of a single trial. *Value Line Fund Inc., v. Marcus*, 161 F.Supp 533 (S.D.N.Y. 1958). The fact that witnesses would be required to repeat their testimony in separate trials is a factor weighing against an order for separate trials due to the fact that this wastes limited judicial resources, escalates litigation costs for all parties, and inconveniences witnesses and jurors. *Wright v. Sears Roebuck & Co.,* 2010 WL 330216, *3 (W.D. La. 2010).

In the present case Exxon seeks severance of the claims related to two contiguous tracts of land claiming the operations on the two were governed by different lease agreements and that there continues to be production in Section 12 while the wells in Sections 7 and 8 were plugged and abandoned some time ago. Doc. 103, att. 1, p. 7. Exxon suggests severance would prevent jury confusion and better effectuate the administration of justice. *Id.*

Sweet Lake counters that claims related to the two tracts involve the same occurrences, i.e. Exxon's operations on its property and contamination alleged to have occurred as a result. Doc. 122, p. 8. The wells at issue are only one mile apart, plaintiff claims. *Id.* Plaintiff states that judicial efficiency requires the claims to remain together as expert testimony as to "defendants' policies and procedures" would be the same so that separate trials would require these witnesses to testify to the same areas twice. *Id.* Plaintiff also casts doubt on the timeline of operations on the separate tracts set forth by Exxon. *Id.* For these reasons, plaintiff argues that defendant's motion to stay and sever [doc. 103] should be denied. Doc. 122, p. 9-10.

We see no reason to sever the claims for convenience or otherwise. We find commonality in some, although not all, issues related to the two tracts. We find that severance would significantly escalate the costs involved, particularly expert witnesses who would be called to testify twice, and in some areas their testimony would be identical in the two trials. Any confusion that might result from these two matters being tried together could easily be remedied with proper jury instructions.[1]

---

[1] *See Hardesty Builder, Inc. v. Mid-Continent Cas. Co,* 2010 WL 2787810, *3 (S.D. Tex., 2010).

For the reasons stated Exxon's Motion to Sever is DENIED.

*Exxon's Motion to Stay and Sweet Lake's Motion to Stay:*

Exxon also asks that the proceedings related to Sections 7 and 8 be stayed, an action which would mitigate in favor of severing the pending claims so that the Section 12 claims could go forward. The basis of the requested stay is that the DNR has issued compliance orders relating to the wells in Sections 7 and 8. Doc. 103, att. 1, p. 7; Doc. 103, atts. 8-10. Two of the compliance orders require their recipients to submit plans for assessment of soil and groundwater conditions at the subject sites and the third "requires MOEPSI, a subsidiary of Exxon, to implement a plan to dispose of the E&P Waste remaining on site by September 1, 2011." Doc. 133, att. 1, p. 3. Sweet Lake also seeks a stay but not of this proceeding; rather, Sweet Lake asks that we stay the orders of the DNR so that this litigation may go forward in its entirety as scheduled. Doc. 133.

Insofar as the arguments of Exxon to stay this litigation and of Sweet Lake to stay the compliance orders are virtually mirror images of each other, we will dispose of each within this section, granting Sweet Lake's request and denying Exxon's.

A procedure for addressing remediation claims in courts was prescribed by the Louisiana Legislature in La. Rev. Stat. 30:29 (commonly referred to as Act 312). Act 312 was adopted to address a dichotomy between "law in the books and living law in Louisiana" identified by the Louisiana Supreme Court in *Corbello v. Iowa Prod.,* 850 So.2d 686 (La. 2003) (quoting *Louisiana Civil Code 2000* LV, Yiannopoulas ed., West 2000). In *Corbello* the Louisiana Supreme Court recognized the "need for a comprehensive body of legislation werein the state would oversee the problem in oilfield waste sites." 850 So.2d at 696. "Indeed, it was our recognition in *Corbello* that

-5-

prompted the Louisiana Legislature to take Action in this area. Act 312 adopts a procedure and simply seeks to ensure that the property that is environmentally damaged is actually remediated." *M.J. Farms, Ltd., v. Exxon Mobil Corp.*, 998 So.2d 16 at 36 (La. 2008). To this end, Act 312 "provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the [DNR], office of conservation." *Id.*

Once a claim is made in district court alleging environmental damage from oilfield exploration or production, notice must be given to DNR. § 30:29(B)(1). At this juncture, the litigation is stayed for 30 days while DNR determines if they will intervene in the litigation. § 30:29(B)(1-2). Once the litigation resumes, regardless of whether DNR intervenes, the trial court must determine whether environmental damage has occurred and the liable party for such damage, either through admission or trial. § 30:29(C)(1).

Responsible parties are then to develop a remediation plan, which is submitted to DNR. *Id.* DNR then evaluates the plan and takes comments from all interested parties, including plaintiffs, and holds a public hearing on the issue. § 30:29(C)(2). When finished, DNR submits a plan it determines to be the most feasible to remediate the environmental damage and protect the health, safety and welfare of the people, back to the presiding court, along with an estimated schedule of costs. § 30:29(C)(2-4). Once submitted, the court shall adopt the DNR approved plan unless a party is able to show that another plan is more feasible to secure the goals above. § 30:29(C)(5).

Upon court finalization of a remediation plan, liable parties submit sufficient funds to carry out the plan directly into the registry of the court. § 30:29(D)(1). The court

retains jurisdiction over the funds deposited and the liable parties. § 30:29(D)(4). If the court finds the deposited amount to be insufficient, it reserves the right on motion by a party, or its own motion, to require additional funds to be deposited in the registry by liable parties. *Id.*

Sweet Lake suggests this court has authority to stay the compliance orders through the All Writs Act. 28 U.S.C. § 1651. Doc. 133, att. 1, p. 4. It argues that the compliance orders "frustrate this Court's jurisdiction to determine and implement a remedy for significant pollution," not for the least of which reason that plaintiff has been shut out of the DNR process.[2] Doc. 133, att. 1, p. 5. It notes that DNR chose to not participate in this litigation after being given notice of its pendency and that it took no action at all on these issues until the eve of trial when it issued the compliance orders that Exxon suggests should upend this process and that DNR claims Sweet Lake has no right to intervene. Doc. 133, att. 1, p. 6.

Exxon counters[3] that DNR does not lose its authority to issue orders under Act 312. Doc. 147, p. 9. It maintains that this court's issuance of a stay of the compliance order would be "an infringement upon the authority and direction of the DNR, and in particular Conservation, [that] is not justified by the All Writs Act in this case." Doc. 147, pp. 2-3. Exxon suggests:

> [A] stay of the compliance orders would violate separation-of-powers principles. Pursuant to the authority expressly granted it by the Legislature, Conservation, in its judgment, determined that certain

---

[2] See Doc. 133, att. 5, where in the DNR advises plaintiff that it has no standing to seek a hearing on the compliance orders as "the right to challenge these orders or to request a stay to these orders lies solely with" the operators to whom the orders were issued.

[3] All defendants filed their own opposition to Sweet Lake's request for stay of the DNR compliance orders. See Docs 147-49. Insofar as all defendants take the same position and in order to reduce confusion, reference will be made only to the arguments of Exxon.

> remediation of Sweet Lake's property is necessary. The agency has vast expertise in oil and gas matters and is in a superior position to know what should be remediated and when it should be remediated. Staying the compliance orders will effectively veto Conservations judgment and strip the agency of its statutory authority to remedy violations (even while an Act 312 suit is pending), thereby infringing on the power and autonomy of *both* the legislative and executive branches. The separation-of-powers doctrine prohibits this result.

Doc. 147, p. 5. In making this argument Exxon suggests that this court is devoid of authority to have input into the remediation process and that it is the state agency whose jurisdiction over this issue is primary.[4]

By supplemental memorandum filed August 22, 2011, Exxon further argues that a suit filed by Sweet Lake in the 19th Judicial District Court seeking injunctive relief against the Louisiana Office of Conservation, Commissioner of Conservation ("Commissioner") constitutes an admission by Sweet Lake that venue to question the compliance orders is vested solely in that court. Exxon advocates that plaintiff's request for a stay of those orders in this court "can now be properly seen for what it is, an impermissible collateral attack on the Compliance Orders." Doc. 203, p. 2.

In *M.J. Farms Ltd. V. Exxon Mobile Corp,* 998 So.2d 16 (La. 2008) the Louisiana Supreme Court thoroughly examined the Act when considering its constitutionality. In that case Exxon and other defendants filed exceptions of prematurity to plaintiff's original claim arguing that plaintiff failed to exhaust administrative remedies under Act 312 and alternatively it filed an exception of lack of subject matter jurisdiction based upon the doctrine of primary jurisdiction.[5] "Exxon argued Act 312 grants primary

---

[4] See fn. 6 for a discussion of "Primary jurisdiction.".

[5] Original suit was filed in *M.J. Farms* on April 25, 2006. Act 312 became effective June 8, 2006, but Section 3 of the act provided it would apply to all suits then pending unless trial had been set on or before March 27, 2006.

jurisdiction in claims for environmental damage to the Commissioner of Conservation of LDNR and requested the trial court to dismiss the action and refer to the matter to LDNR for adjudication." 998 So.2d at 22.[6] In short Exxon argued to the Louisiana Supreme Court the exact position it argues here, that this court is devoid of authority to probe the issue of remediation – that authority lies strictly with the Louisiana Department of Natural Resources – and any objection to the DNR's exercise of its authority must be brought in the 19th Judicial District Court.

Exxon's position was not considered by the trial court in *M.J. Farms* as the court found Act 312 to be unconstitutional. On direct appeal to the Louisiana Supreme Court, plaintiff in *M.J. Farms* took the same position as Exxon – that Act 312 awarded primary jurisdiction of remediation cases to the DNR – to support is claim that Act 312 was an unconstitutional divestiture of the district court's original jurisdiction in the manner proscribed by *Pope v. State*, 792 So.2d 713 (La. 2001).[7]

The Louisiana Supreme Court in *M.J. Farms* ruled as follows:

> Applying the rationale of *Pope* to the present case, we find Act 312 does not divest the district court of original jurisdiction. Unlike CARP, ***not only is the claim for environmental damages filed in the district court, the claim is not deferred to DNR until the district court determines***

---

[6] "The doctrine of 'primary jurisdiction' is applicable when a court and state/governmental agency have concurrent jurisdiction over a claim or a dispute leading to potential conflicts on how such disputes are resolved. In such cases, a court at its discretion may dismiss the claims before it and defer the matter to the agency that has been granted primary jurisdiction over the claims. See *The Daily Advertiser v. Trans–La,* 612 So.2d 7 (La.1993) distinguishing between "primary" jurisdiction and "exclusive" jurisdiction. See also *Magnolia Coal Terminal v. Phillips Oil Co.,* 576 So.2d 475 (La.1991), the concurring opinions of Chief Justice Calogero, Justice Lemmon and Justice Dennis and the subsequent *per curiam* (on rehearing)." *M.J. Farms, Ltd. v. Exxon Mobil Corp.* 998 So.2d 16 at 22 (La. 2008).

[7] The *Pope* court declared unconstitutional a statute that provided certain administrative procedures as the exclusive remedy available to Louisiana Department of Correction inmates and prohibited a state court from entertaining any complaint or grievance from an offender unless he or she first exhausted his or her administrative remedy. Specifically it found that procedure violative of Section 16 of Article V of the Louisiana Constitution which states in Section (1) that "[e]xcept as otherwise authorized by this constitution . . . a district court shall have the original jurisdiction of all civil and criminal matters."

> ***environmental damage exists and further determines the legally responsible party.*** La.Rev.Stat. § 30:29(C)(1). Moreover, the district court is not required to adopt the plan approved by the administrative agency, and further retains jurisdiction to compare the various proposed plans, whether proposed by a party or the administrative agency, and determines which plan is "a more feasible plan to adequately protect the environment and the public health, safety, and welfare." La.Rev.Stat. § 30:29(C)(5).

*M.J. Farms*, *supra* at 37 (emphasis added). Neither did the *M.J. Farms* Court accept the position of plaintiff there that Act 312 denied it of its right to access to courts. On that point the Court stated:

> [U]nder the provisions of Act 312, the district court remains an active participant in the entire restoration process. It is the filing of pleadings in the district court making demand for environmental damages that triggers implementation of Act 312. See La.Rev.Stat. § 30:29(B)(1). Furthermore, it is in the district court that it is determined whether environmental damages exists, who caused the damage, and it is the district court that orders the development of a restoration plan. La.Rev.Stat. § 30:29(C)(1). Finally, it is the district court who considers the various restoration plans, including any that the surface owner may choose to submit, determines which one is most feasible, and oversees the implementation of the restoration plan. La.Rev.Stat. § 32:29(C)(5).

*Id.* at 37-38.

Contrary to Exxon's assertions in this case, the Louisiana Supreme Court has held that the authority to determine (1) that environmental damage has occurred, (2) who is responsible for remediation, and (3) what the plan of remediation will be lies primarily with the district court and not with the DNR. The DNR will not be involved in the process until ***after*** the existence of contamination and responsibility therefore has been determined. And even once the DNR is involved, it acts more or less in an advisory capacity insofar as whatever are its suggestions for remediation are not binding on the district court which, at all times, has authority to reject the plan submitted. The Louisiana

court makes it equally clear that any district court considering litigation brought under the Act will continue to have jurisdiction even after the preliminary determinations are made to "oversee the implementation of the restoration plan." *Id.*

Neither is Sweet Lake's request in this court for a stay of the compliance orders an impermissible collateral attack as suggested by Exxon. The "collateral attack" rule has been described by the Fifth Circuit as a "close cousin of res judicata and collateral estoppel." *Trahan v. Superior Oil Co.,* 700 F.2d 1004 at 1019 (5th Cir. 1983). Many Louisiana decisions "reflect the principle that suit under [La. R.S. 30:]12 is the exclusive means by which an order of the Commissioner may be called into question in a judicial proceeding." *Trahan,* supra, at 1015 (citations omitted). It is a principle that recognizes the primacy of the agency to deal with the subject matter at hand. As we have seen from the above discussion, however, the Louisiana legislature through enactment of Act 312 has determined that no longer will the issue of remediation be within the sole province of the DNR, that this court not only has primary jurisdiction over the issue of how remediation will occur but also has the authority to reject outright the recommendation of the DNR.

This being the case, then, any order of the DNR issued respecting remediation that was issued without regard to the procedure mandated by Act 312 has no effect on this litigation. This litigation does not constitute any impermissible collateral attack on the agency's order.[8]

---

[8] Although not necessary in making our determination, it is also noteworthy that DNR has refused to allow plaintiff to participate in the process by suggesting it is not entitled to even a hearing on the order. Doc. 133, att. 5. It is unclear to this court how that position could comport with the clear mandates of La. R.S. 30:6(B) which affords any "interested person" the right to have the commissioner call a hearing for purposes of taking action on a matter within his jurisdiction. It is equally unclear how plaintiff could in any

And finally our conclusion that we need not defer this litigation in favor of any DNR proceeding also obviates the mandate that disputes related to the DNR order be brought only in the 19th Judicial District Court. *See Frank C. Minvielle, L.L.C. v IMC Global Operations, Inc.,*, 380 F.Supp.2d 755 (W.D.La. 2004) (court's refusal to dismiss due to plaintiff's not having exhausted administrative remedies set forth in La. R.S. 30:1 was dispositive of issue of whether suit must be filed in the 19th Judicial District Court).

Sweet Lake has suggested this court has the authority to issue a stay of the agency's order under the auspices of the All Writs Act, 28 U.S.C. § 1651. The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . . ." *U.S. v. New York Tel. Co.* 98 S.Ct. 364, 373 (1977).

Insofar as we conclude that Act 312 and the proper administration of justice compels this court to consideration of existence of contamination, responsibility for its remediation, and a plan for that remediation for the property involved in this litigation, we also conclude that the motion filed by Sweet Lake must be and it is hereby GRANTED.

---

manner be stopped from questioning the efficacy of an order issued in a proceeding in which it was not allowed to participate.

-13-

**Conclusion**

For the reasons given above, the motion of defendant Exxon Mobil Corporation and ExxonMobil Oil Corporation ("Exxon") to sever and stay proceedings (Doc. 103) is hereby DENIED and the motion of plaintiff The Sweet Lake Land and Oil Company ("Sweet Lake") to stay the Louisiana Department of Natural Resources ("DNR") Compliance Orders Nos. E-I & E-11-0635, E-I & E-11-0636, and E-I & E-11-0637 (Doc. 133) is hereby GRANTED

THUS DONE AND SIGNED in Lake Charles, Louisiana, this 1st day of September, 2011.

_____
KATHLEEN KAY
United States Magistrate Judge