RECEIVED
IN LAKE CHARLES, LA

SEP 29 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND & OIL COMPANY LLC | : | DOCKET NO. 2:09 CV1100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORP. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on the issue of punitive damages, filed by the defendants, Exxon Mobil Corporation and ExxonMobil Oil Corporation (collectively "ExxonMobil") [Doc. 159]. The plaintiff, Sweet Lake Land & Oil Co. ("Sweet Lake") filed an Opposition [Doc. 209], and ExxonMobil filed a Reply [Doc. 240].

## FACTS

This lawsuit arises out of environmental damages to Sweet Lake's property allegedly caused by ExxonMobil and other defendants who conducted oil and gas exploration and production activities on the property. Sweet Lake alleges, *inter alia,* that ExxonMobil and its predecessors contaminated its soil and groundwater with hazardous materials while operating ten oil and gas wells located on various portions of the property.[1] It seeks remediation of the property and damages, including punitive damages.[2] ExxonMobil now moves for summary judgment on the issue of its liability for punitive damages.

---

[1] 3d Am. Compl. ¶¶ 8, 10 [Doc. 86].

[2] *Id.* ¶ 35.

1

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## ANALYSIS

Former Civil Code article 2315.3 provided for the award of exemplary damages where a "plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous substances." The article became effective

2

on September 4, 1984 and was repealed on April 16, 1993. *Bujol v. Entergy Services, Inc.*, 2003-0492 at 8 n.6 (La. 5/25/04), 922 So. 2d 1113, 1121 n.6. Because its effect was not retroactive, the article applies only to conduct that occurred between those dates. *See Anderson v. Avondale Indus., Inc.*, 00-2799 at 20-21 (La. 10/16/01); 798 So. 2d 93, 102.

ExxonMobil argues that because Sweet Lake has failed to present evidence that ExxonMobil conducted any oil and gas operations during the period in which former article 2315.3 was in effect, it is entitled to summary judgment on the issue of punitive damages. In support of its argument, it points to certified records from the State of Louisiana, which reflect that ExxonMobil ceased operating all but one of its wells before 1977 and did not commence operating the remaining well until 2006.[3]

Sweet Lake counters by asserting that even if ExxonMobil did not conduct any oil and gas operations during former article 2315.5's effective period, its tortious storage of hazardous and toxic substances on the property continued while the article was in effect. In particular, it alleges that ExxonMobil constructed an unlined "Big Pit" on the property for the storage of toxic substances produced from the oil and gas wells it operated.[4] This "Big Pit" was allegedly located at ExxonMobil's production facility near the B-2 Well, which ExxonMobil operated between 1952 and 1973, and remained on the property until it was closed by other defendants in late 1989.[5] Accordingly, Sweet Lake asserts that Exxon's storage of hazardous materials in the Big Pit between September 24, 1984, the effective date of former Article 2315.5, and the pit's closure in 1989 constitutes a continuing tort for which punitive damages may be awarded.

---

[3] *See* Defs.' Mot. Summ. J. Ex. A [Doc. 159-3].

[4] *See* Pl.'s Opp'n to Defs.' Mot. Summ. J. 1.

[5] *Id.*

3

Under the continuing tort doctrine, when an injury is caused by continuing unlawful acts, the resulting tort continues until the harmful conduct ceases. *See South Central Bell Telephone Company v. Texaco, Inc.* 418 So.2d 531 (La. 1982). Once the damage-causing conduct terminates, the tort also terminates, even if the damage persists and progressively worsens. *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99), 737 So.2d 720. Thus, the determination of whether the tort is continuous "is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 07/06/10); 45 So. 3d 991.

Here, Sweet Lake argues that ExxonMobil's alleged placement of toxic substances in the Big Pit constituted a continuous tort that did not cease until the Pit was closed. The Louisiana Supreme Court recently addressed an almost identical claim in *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10); 48 So. 3d 234. In *Marin,* the plaintiffs argued that the defendant oil company's pollution of their land constituted a continuing tort on which prescription could not begin to run until the contamination was removed. As in this case, the plaintiffs alleged that the defendants had deposited oilfield waste into unlined pits, causing successive damages as the pollution migrated.

In rejecting the plaintiffs' claims, the court in *Marin* noted that the operating cause of the plaintiffs' injury was "the actual disposal or storage of the oilfield waste in unlined pits on plaintiffs' property." 48 So. 3d at 254. Accordingly, it held that the tort terminated and prescription began to run when the defendants stopped actually using the pits.

Sweet Lake, however, seizes upon other language in *Marin* stating that the defendant's trespass in that case ended "[w]hen the pits were closed" and argues that regardless of when ExxonMobil ceased actively operating on the property in the present case, its tortious conduct

4

continued until the Big Pit was closed in 1989. This argument is not persuasive. Careful review of the *Marin* opinion reveals that the *Marin* court's primary determinant for when the tort terminated was when the defendant stopped actively depositing hazardous substances into the pits at issue. The court simply used the closure of the pits as a convenient marker for that point in time. *See Marin*, 48 So. 3d at 254 ("The operating cause of plaintiff's injury was still the actual disposal and storage of the oilfield waste . . . When the pits were closed, the conduct ceased").

In fact, the court in *Marin* explicitly rejected the notion that a defendant's failure to remediate harm it previously caused can constitute a continuing breach of duty, stating that "the breach of the duty to right the wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." 48 So. 3d at 253 (quoting *Crump v. Sabine River Authority*, 98-2326 at (La.6/29/99), 737 So.2d 720, 729). Therefore, ExxonMobil's failure to close the Big Pit after it ceased its oil and gas operations on the property cannot constitute a continuing tort.

Because Sweet Lake has e failed to present any evidence that ExxonMobil engaged in any actionable conduct during the effective period of former article 2315.5, ExxonMobil's Motion for Partial Summary Judgment on the issue of punitive damages will be granted.

Lake Charles, Louisiana, this ⎯⎯ day of ⎯⎯September⎯⎯ 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

5