RECEIVED
IN LAKE CHARLES, LA
OCT 2 0 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND & OIL COMPANY LLC | : | DOCKET NO. 2:09 CV1100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORP. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on the issue of punitive damages, filed by the defendant Texas Eastern Skyline Oil Company ("Skyline") [Doc. 158]. The plaintiff, Sweet Lake Land & Oil Co., LLC ("Sweet Lake") filed an Opposition [Doc. 207], and Skyline filed a Reply [Doc. 245].

## FACTS

This lawsuit arises out of environmental damages to Sweet Lake's property located in Cameron Parish, Louisiana (the "Property"). Sweet Lake's predecessor in interest, Sweet Lake Land & Oil Co., Inc., granted a series of mineral leases affecting the Property. On July 1, 2009, Sweet Lake filed this lawsuit against various companies who hold or previously held interest in these leases, alleging that the defendants contaminated the Property in connection with their oil and gas operations. Its prayer for relief includes a claim for punitive damages under former Louisiana Civil Code article 2315.3.

Skyline acquired interests in several mineral leases affecting the Property in 1972.[1] Between 1973 and 1986, it operated eight wells on the Property, including the Sweet Lake No. 1 (Serial No. 46320), No. 2 (Serial No.144409), (3) No. 4 (Serial No. 147811), No. 5 (Serial No.

---

[1] Pl.'s Opp. to Def.'s Mot. Summ. J. 1 [Doc. 207].

1

149018), No. 6 (Serial No. 152771), No. 7 (Serial No. 177610), No. B-2 (Serial No. 46320) wells in Section 8, T12S, R6W, and the Sweet Lake No. 3 (serial number 143699) in Section 7, T12S, R6W.[2]

As of September 4, 1984, all but three of these wells had been plugged and abandoned.[3] Skyline remained the operator of record of the B-2 Well and Well No. 7 until they too were plugged and abandoned in 1985.[4] It also continued to operate Well No. 2 until December 1, 1986, when it assigned all of its remaining interest in the Property to Samedan.[5] Skyline conducted no further operations on the Property after that date.

Skyline now moves for partial summary judgment dismissing Sweet Lake's claim for punitive damages on the grounds that Sweet Lake has failed to produce any evidence that Skyline engaged in conduct for which punitive damages may be awarded during the time period in which punitive damages were available under former La. C.C. art. 2315.3.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of

---

[2] *See* Def.'s Mot. Summ. J. Ex. 1 [Doc. 158-2].

[3] *See id.*

[4] *See id.*

[5] *Id.*; Def.'s Mot. Summ. J. Ex. 2 [Doc. 158-3].

2

material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## ANALYSIS

Former Civil Code article 2315.3 provided for the award of exemplary damages where a "plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous substances." In order to recover punitive damages under article 2315.3, a plaintiff must prove that the defendant engaged in wanton or reckless conduct. Louisiana courts have defined wanton or reckless actions as those taken in disregard of a high and excessive degree of danger known to the wrongdoer or apparent to reasonable person. *Grefer v. Alpha Technical*, 2002-1237, p. 14-15 (La.App. 4 Cir. 08/08/07); 965 So.2d 511, 518 . Determination of whether conduct was reckless is a question of fact. *Quick v. Myers Welding and Fabricating, Inc.* 94-282 (La. App. 3d Cir. 12/7/94), 649 So. 2d 999, 1003.

Sweet Lake alleges that Skyline used unlined pits to dispose of brine and other oilfield wastes generated from its wells, resulting in the contamination of the soil and groundwater through seepage. It further alleges that the oil and gas industry knew as early as 1930 that the use of unlined earthen pits to store brine and oilfield wastes often resulted in contamination and that Skyline showed a conscious indifference to this risk by failing to evaluate whether its pits were properly constructed and maintained. Accordingly, Sweet Lake contends that Skyline's alleged storage of toxic substances in unlined pits constituted wanton and reckless behavior entitling it to punitive damages under former La. C.C. art. 2315.3.

Skyline counters by asserting that even if disposing of oilfield wastes in unlined pits would support a claim for punitive damages, Sweet Lake has failed to produce any evidence that Skyline used unlined pits during the time period in which punitive damages were available under former article 2315.3. The article became effective on September 4, 1984 and was repealed on April 16, 1993. *Bujol v. Entergy Services, Inc.*, 2003-0492 at 8 n.6 (La. 5/25/04), 922 So. 2d 1113, 1121 n.6. The Louisiana Supreme Court has held that it cannot be applied retroactively. *See Anderson v. Avondale Indus., Inc.*, 00-2799 at 20-21 (La. 10/16/01); 798 So. 2d 93, 102. Accordingly, it applies only to conduct that occurred between September 4, 1984 and April 16, 1993. *Id.* Skyline argues that because Sweet Lake has failed to produce evidence that Skyline used any pit between 1984 and the sale of its interest in the Property to Samedan in 1986, it is entitled to summary judgment on Sweet Lake's punitive damages claims.

Sweet Lake makes two arguments in opposition to Skyline's motion. First, it argues that it has presented sufficient factual evidence that Skyline did in fact continue to store hazardous wastes in unlined pits between 1984 and 1986 to create a genuine issue of material fact for trial. Next, it argues that even if Skyline did not actively use unlined pits between 1984 and 1986, the

4

continued existence of pits it had previously used until 1990 constitutes a continuing tort for which punitive damages may be awarded.

## Evidence of Tortious Conduct between 1984 and 1986

The court finds that there is not sufficient evidence that Skyline disposed of hazardous oilfield wastes in unlined pits during the effective period of former La. C.C. at. 2315.3 to create a genuine issue of fact for trial. In support of its argument to the contrary, Sweet Lake references the deposition testimony of Skyline representative Robert Haley and a declaration submitted by its expert, Paul Templet. Both fail to supply "specific facts" from which a reasonable factfinder could conclude that Skyline disposed of hazardous substances in pits between 1984 and 1986. *See Tubacex*, 45 F.3d at 954.

The portions of Mr. Haley's deposition Sweet Lake cites allude to documents presented to Mr. Haley during his deposition which Sweet Lake contends support its allegation that Skyline disposed of oilfield waste in unlined pits on the Property. In particular, the cited testimony references a memo between two Skyline employees stating that a well had been "cleaned to pit" and invoices for the repair of drainage lines that flowing into saltwater pits.[6] The most recent of these documents, however, is dated August, 15, 1980, more than four years before former La. C.C. 2315.3 came into effect. Accordingly, they are too remote in time to constitute evidence that Skyline continued to use pits after 1984.

Sweet Lake also cites deposition testimony alluding to a May 28, 1983 memo between two Skyline representatives stating that the amount of water being produced by Sweet Lake Well No. 7 had rapidly increased.[7] Nothing in the testimony, however, suggests that the memo

---

[6] *See* Pl.'s Opp. to Def.'s Mot. Summ. J. Ex. A, Deposition of Robert Haley 115, 134-36[Doc. 207-1].

[7] *See id.* at 110.

5

referenced how Skyline disposed of this water. Thus, none of Mr. Haley's deposition testimony supports Sweet Lake's contention that Skyline continued to dispose of oilfield wastes in unlined pits while former La. C.C. 2315.3 was in effect.

Mr. Templet's declaration is more directly on point. He states:

> Based upon my review of aerial photographs of the Property, many pits, including the large pit near the B-2 well, contained fluids until being closed around 1990. See 1985 aerial photograph, attached as Ex. C, and February 1990 aerial photograph, attached hereto as Exhibit E. It is my opinion that Skyline stored hazardous and toxic wastes in pits on the Property between 1984 and 1986.[8]

His declaration, however, provides no explanation for how he arrived at this conclusion. It is well established that unsupported allegations are insufficient to defeat summary judgment. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). The Fifth Circuit has held that "[f]or the purposes of summary judgment under Fed.R.Civ.P. 56(e), an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion." *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 331 (5th Cir 1998).

Here, Mr. Templet's declaration merely states that he based his conclusions on his review of aerial photographs from 1985 and 1990. He provides no indication of how he determined when the fluids depicted in the photographs were placed in the pits, that Skyline placed them there, nor even that the pits contained toxic oilfield waste rather than rainwater. Accordingly, his declaration is insufficient to create a genuine issue of material fact as to whether Skyline used the pits between 1984 and 1986.

---

[8] Pl.'s Mot. Summ. J. Ex. B, Declaration of Paul Templet ¶ 14 [Doc. 207-2].

6

## Continuing Tort Doctrine

Sweet Lake asserts that even if Skyline did not actively deposit waste into the pits on the Property between 1984 and 1986, the continued presence of toxic substances in pits it had previously used constitutes a continuing tort that did not cease until those pits were closed in 1990. Under the continuing tort doctrine, when an injury is caused by continuing unlawful acts, the resulting tort continues until the harmful conduct ceases. *See South Central Bell Telephone Company v. Texaco, Inc.* 418 So.2d 531 (La. 1982). Once the damage-causing conduct terminates, the tort also terminates, even if the damage persists and progressively worsens. *Crump v. Sabine River Authority,* 98-2326 (La. 6/29/99), 737 So.2d 720. Thus, the determination of whether the tort is continuous "is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 07/06/10); 45 So. 3d 991.

Here, Sweet Lake argues that its injury was caused by Skyline's contamination of its property with harmful chemicals. Accordingly, it contends that the continued presence of contaminants in open pits during the effective period of former La. C.C. 2315.3 constitutes a continuing tort for which punitive damages may be awarded.

The Louisiana Supreme Court recently rejected an almost identical claim in *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10); 48 So. 3d 234. In *Marin,* the plaintiffs argued that the defendant oil company's pollution of their land constituted a continuing tort on which prescription could not begin to run until the contamination was removed. As in this case, the plaintiffs alleged that the defendants had deposited oilfield waste into unlined pits, causing successive damages as the pollution migrated.

7

In rejecting the plaintiffs' claims, the court in *Marin* noted that the operating cause of the plaintiffs' injury was "the actual disposal or storage of the oilfield waste in unlined pits on plaintiffs' property." 48 So. 3d at 254. Accordingly, it held that the tort terminated and prescription began to run when the defendants stopped actually using the pits.

Sweet Lake, however, seizes upon other language in *Marin* stating that the defendant's trespass in that case ended "[w]hen the pits were closed" and argues that regardless of when Skyline ceased actively operating on the property in the present case, its tortious conduct continued until its pits were closed in 1990.

This argument is not persuasive. Careful review of the *Marin* opinion reveals that the *Marin* court's primary determinant for when the tort terminated was when the defendant stopped actively depositing hazardous substances into the pits at issue. The court simply used the closure of the pits as a convenient marker for that point in time. *See Marin*, 48 So. 3d at 254 ("The operating cause of plaintiff's injury was still the actual disposal and storage of the oilfield waste . . . When the pits were closed, the conduct ceased").

In fact, the court in *Marin* explicitly rejected the notion that a defendant's failure to remediate harm it previously caused could constitute a continuing breach of duty, stating that "the breach of the duty to right the wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." 48 So. 3d at 253 (quoting *Crump v. Sabine River Authority*, 98-2326 at (La.6/29/99), 737 So.2d 720, 729). Therefore, Skyline's failure to close its pits after it stopped actively depositing waste in them cannot constitute a continuing tort.

8

## CONCLUSION

Because Sweet Lake has failed to present any evidence that Skyline engaged in any actionable conduct during the effective period of former article 2315.5, Skyline's Motion for Partial Summary Judgment on the issue of punitive damages will be granted.

Lake Charles, Louisiana, this __19__ day of __October__ 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE