RECEIVED
IN LAKE CHARLES, LA.
NOV - 3 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND & OIL COMPANY LLC | : | DOCKET NO. 2:09 CV 1100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORP. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on Limited Ownership Liability, filed by the defendant, Noble Energy, Inc. ("Noble") [Doc. 167]. The plaintiff, Sweet Lake Land & Oil Co. ("Sweet Lake") filed an Opposition [Doc. 214]. Noble filed a Reply [Doc. 248], and Sweet Lake filed a Supplemental Memorandum in Opposition [Doc. 286]. The court heard oral arguments on the motion on October 25, 2011. Thereafter, the court took the matter under advisement.

## FACTS

This lawsuit arises out of the alleged contamination of Sweet Lake's property located in Cameron Parish, Louisiana (the "Property"). The defendants are oil and gas companies who held lease interests or conducted oil and gas exploration and production activities on the Property.[1] Sweet Lake alleges that the defendants' oil and gas operations contaminated the soil and groundwater on the Property with hazardous materials.[2] It seeks a judgment holding the

---

[1] Third Am. Compl. ¶¶ 6 & 7 [Doc. 86].

[2] *Id.* ¶ 10.

1

defendants solidarily liable for damages in an amount necessary to evaluate and restore the Property, or in the alternative, an injunction compelling the defendants to do the same.[3]

Noble's predecessor, Samedan Oil Company ("Samedan"), acquired interests in six mineral leases affecting the Property: Record No. 60464 (the "Magnolia Lease"), Record No. 130913 (the "Skyline Lease"), and Record Nos. 180243, 181931, 183233, and 184799 (collectively, the "MCZ leases").[4] These leases are described hereinafter.

## Magnolia Lease

Sweet Lake issued the Magnolia Lease to Magnolia Petroleum Company on January 2, 1951.[5] The lease covered, among other areas, Section 7 and a portion of the western half and the west half of the eastern half of Section 8, T12 S, R 6W.[6] On January 2, 1959, Magnolia assigned an undivided two-thirds of its interest in the south half of Section 7 and the north half of section 18 above 5400 feet to Samedan.[7]

## Skyline Lease

On July 17, 1972, Sweet Lake issued a lease covering the north half of the northwest quarter and the west half of the northeast quarter of Section 8 T12S, R6W to Albert D. Miller.[8]

---

[3] Fourth Am. Compl. ¶¶ 33 & 34 [Doc. 253].

[4] Mem. in Supp. of Def.'s Mot. for Partial Summ. J. 2 [Doc. 167-1]. Sweet Lake alleges that Samedan also acquired an interest in a Surface Use Contract which contained restoration obligations. Because Noble is still trying to ascertain whether Samedan in fact acquired any interest in the Surface Use Contract, however, it does not seek partial summary judgment as to its obligations under that contract. Noble's Reply to Pl.'s Opp. to Noble's Mot. for Summ. J. on Solidarity Liability and Surface Restoration Obligations 4 n.17 [Doc. 252].

[5] Def.'s Mot. for Partial Summ. J. Ex. 1, Magnolia Lease SL00777 [Doc. 167-4].

[6] Id.

[7] Def.'s Mot. for Partial Summ. J. Ex. 2 [Doc. 167-5].

[8] Def.'s Mot. for Partial Summ. J. Ex. 11, Skyline Lease [Doc. 167-14].

Texas Eastern Skyline Oil Company ("Skyline") acquired an interest in the lease from Mr. Miller on October 13, 1972.[9] On December 1, 1986, Skyline assigned certain of its interest in the lease to Samedan.[10]

The Skyline Lease provides "[t]he Lessee shall be responsible for all damage to improvements, timber, growing crops and irrigation wells caused by Lessee's operations. Lessee shall restore the surface of the land as near as reasonably practicable to its original condition following cessation of operations, if any, thereon."[11]

### MCZ Leases

Sweet Lake issued a chain of four leases covering various portions of the Property to MCZ, Inc. in 1983.[12] Samedan acquired interests in each of the leases between 1983 and 1987 by virtue of several assignments from both MCZ and intervening lessees.[13]

The MCZ leases each provide that the "[l]essee shall be responsible . . . for all damages caused by Lessee's operations."[14] They further state that "[w]ithin ninety days after the completion or the abandonment of each well, the land surrounding said well shall be restored by Lessee to as near the condition existing prior to the commencement of Lessee's operations as is reasonably possible under the circumstances."[15]

---

[9] Def.'s Mot. for Partial Summ. J. Ex. 12 [Doc. 167-15].

[10] Def.'s Mot. for Partial Summ. J. Ex. 13 [Doc. 167-16].

[11] Def.'s Mot. for Partial Summ J. Ex. 11, Skyline Lease ¶ 8.

[12] Def.'s Mot. for Partial Summ. J. Exs. 3-6, MCZ Leases [Docs. 167-6, 167-7, 167-8, 167-9].

[13] Def.'s Mot. for Partial Summ. J. Exs. 7-10 [Docs. 167-10, 167-11, 167-12, 167-13].

[14] MCZ Leases ¶ 17.

[15] MCZ Leases ¶ 8 [Doc. 166-6].

## ISSUES ON SUMMARY JUDGMENT

In its motion for partial summary judgment, Noble seeks to limit its potential liability for the restoration of the Property. Specifically, it asks the court to find, as a matter of law, that its contractual obligation to restore the Property subject to each lease it acquired will be limited to the percentage of ownership interest it acquired.

Sweet Lake raises two arguments in opposition to Noble's motion. First, Sweet Lake argues that the motion is procedurally improper because Noble as failed to allege sufficient facts to allow the court to render partial summary judgment in its favor.[16] In the alternative, Sweet Lake argues all parties holding interest in the leases must be held solidarily liable for the full measure of remediation damages because the obligation to restore property subject to a mineral lease is an indivisible obligation under the Louisiana Civil Code.[17]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little*

---

[16] Pl.'s Mem. in Op. to Def.'s Mot. for Partial Summ. J. 4-6 [Doc. 214].

[17] *Id.* 6-7.

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## ANALYSIS

### Appropriateness of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure was amended, effective December 1, 2010, to expressly provide for partial summary judgment. *See* Fed R. Civ. P. 56 advisory committee's note. It now states that a court shall grant summary judgment as to a claim or defense *or part of a claim or defense* where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

While summary judgment constitutes a final adjudication on the merits, *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 350 (5th Cir. 2001), partial summary judgment is not a final judgment, *Streber v. Hunter*, 221 F.3d 701, 737 (5th Cir. 2000). Rather, it is "merely a pre-trial adjudication that certain issues are established for trial of the case." Its purpose is to "root out, focus, and narrow the issues for trial." *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).

In its motion for partial summary judgment, Noble did not allege facts establishing the specific percentage of ownership interest Samedan acquired in each of the leases at issue. Rather, it noted that it would establish the extent of Samedan's interests in the leases at trial.[18]

Sweet Lake argues that Noble's motion for partial summary judgment is therefore procedurally deficient because it would not allow the court to dispose of any claim raised by Sweet Lake. In particular, Sweet Lake argues that even if the court were to grant Noble's motion, it would be required to conduct additional proceedings to determine the extent of Noble's interests before ruling on the extent of its obligations.

Noble, however, has not asked for summary judgment on Sweet Lake's surface restoration claims in their entirety. Rather, Noble merely seeks a pretrial determination that it could only be held liable for damages up to the amount of Samedan's ownership interest in each of the mineral leases. Amended Rule 56(a) expressly contemplates pretrial adjudication of particular issues within a claim or defense on a motion for partial summary judgment. *See also American Guaranty & Liability Ins. Co. v. Anco Insulation, Inc.*, No. 02-987, 2005 WL 1865552 (M.D. La., Jul. 29, 1985) (unpublished) (holding that a pretrial determination of the law applicable to the allocation of indemnity obligations among the defendant's multiple insurers was proper on a motion for partial summary judgment). Moreover, pretrial adjudication of Noble's motion would narrow and simplify the issues for trial. Accordingly, the court will proceed to consider the merits of the motion.

### Partial Interest Liability

Article 128 of the Louisiana Mineral Code imposes contractual privity between lessors and assignees or sublessees of mineral leases. It provides that "[t]o the extent of the interest

---

[18] Mem. in Supp. of Def.'s Mot. for Partial Summ. J. 2-4.

6

acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations." La. R.S. 31:128.

Noble argues that because Article 128 limits its liability to Sweet Lake "to the extent of the interest [Samedan] acquired," Noble cannot be held contractually liable for the restoration of the property subject to the leases beyond its fractional ownership interest in each of the leases.[19] Sweet Lake counters that because the obligation to restore property subject to a mineral lease is an indivisible obligation under the Louisiana Civil Code, all parties holding any interest in the leases must be held liable *in solido* for the remediation of the property.

The provisions of the Mineral are supplementary to the Louisiana Civil Code. La. R.S. 31:2. Accordingly, the Civil Code articles dealing with ordinary leases apply to oil and gas leases unless negated by a provision of the Mineral Code.

Article 1815 of the Louisiana Civil Code provides that "[a]n obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division." Louisiana Courts have held that an obligation is indivisible where the performance of the obligation cannot be divided or when partial performance would be of little or no use to the obligee. *See* 5 Saul Litvinoff, Louisiana Civil Law Treatise, Law of Obligations § 9.2 (2011). Accordingly, the obligation to build a swimming pool or a house is indivisible. *S & W Investment Co. v. Otis W. Sharp and Son, Inc.*, 170 So.2d 360 (1964).

Where an obligation is divisible, solidarity "shall not be presumed" but arises only from a clear expression of the parties' intent or from the law. La. C.C. art. 1796. Where an obligation

---

[19] Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. 5.

is indivisible, on the other hand, all obligors must be held solidarily liable for the full performance of the obligation. La. C.C. art. 1818.

The obligation to restore the leased premises is, by its nature, an indivisible obligation. Property is either restored or it is not. A well cannot be partially plugged and abandoned. *See Muslow Oil and Gas, Inc. v. Rife Oil Properties, Inc.*, No. 427,920 c/w 427,921, 1st JDC, Caddo Parish, Louisiana ("The obligation of plugging and abandonment of wells is a joint obligation which is indivisible and, in accordance with Civil Code Article 1789, is a solidary obligation among mineral lessees and their assigns."). Likewise, hazardous materials placed into a pit must be removed, or the property remains polluted. Moreover, a partial restoration of property would be unlikely to satisfy either the surface owner or the state.

Noble argues that its obligation to restore the property is nevertheless made divisible by Louisiana Act 312 of 2006. Act 312 enacted La. R.S. § 30:29, which governs the procedures for the remediation of oilfields. The statute provides that if a court finds a party legally responsible for environmental damages, it must order the party to submit a remediation plan to the Louisiana Department of Natural Resources (the "DNR"). La. R.S. § 30:29(C)(1). The DNR reviews the submitted plans and approves the plan it determines to be the most feasible. *Id.* § 30:29(C)(3). Once the DNR approves a plan, the court must adopt the plan and order the responsible parties to fund its implementation. *Id.* § 30:29(C)(5).

Noble argues that because Act 312 converts any obligation it owes to physically restore the surface of the Property into an obligation to pay sums of money into the registry of the court, the obligation must be divisible because money judgments are plainly divisible by their nature. In Louisiana, however, the divisibility of a joint obligation depends on the divisibility of the object of the performance rather than on the remedy sought for breach of the obligation. *Berlier*

*v. A.P. Green Industries, Inc.*, 01-1530 (La. 4/3/02), 815 So. 2d 39, 48. Thus, in *Lanier v. Capital Resources Group, Inc.*, 563 So. 2d 557; 1990 La. App. LEXIS 1581 (La. App. 4 Cir. 6/14/90), the court held that the four defendants were solidarily liable to pay monetary damages for their breach of an indivisible obligation to enter into a real estate purchase and development agreement with the plaintiff. Likewise, in *S & W Inv. Co. v. Otis W. Sharp & Son, Inc.*, 247 La. 158; 170 So. 2d 360 (1964), the court awarded monetary damages for the defendants' breach of an indivisible obligation to build a swimming pool. Accordingly, although Act 312 makes the *remedy* for the breach of an obligation to remediate environmental damages the payment of money, it has no effect on the nature of the underlying obligation.

Alternatively, Noble argues that the language in Article 128 expressly limiting an assignee's liability "to the extent of the interest acquired" supersedes the Civil Code distinction between divisible and indivisible obligations. Louisiana courts, however, have recognized the indivisibility of certain obligations in mineral leases and have accordingly held partial assignees of mineral leases solidarily liable with their assignors for the full performance of those obligations. *See, e.g., Muslow Oil and Gas, Inc. v. Rife Oil Properties, Inc.*, No. 427,920 c/w 427,921, 1st JDC, Caddo Parish, Louisiana ; *Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co., L.L.C.*, 46,153 pp. 62-63 (La. App. 2 Cir. 3/23/11); 63 So. 3d 159, 179-181 (holding the assignee of an undivided 50% interest in a mineral lease directly liable to the original lessor for the full measure of damages resulting from the assignee's breach of an indivisible "Most Favored Nations" provision).

Thus, it appears that the language in Article 128 limiting the liability of a partial assignee or sublessee of a mineral lease "to the extent of the interest acquired" does not supersede the Civil Code provisions dealing with divisible and indivisible joint obligations.

Rather, it simply makes clear that Article 128 does not make each owner of an undivided interest in a mineral lease liable for more than its share of the divisible obligations of the lease, such as the obligation to pay rent or royalty.

## CONCLUSION

The obligation to restore property is, by its nature, an indivisible obligation under the Louisiana Civil Code. Nothing in the Mineral Code or Act 312 changes this. Accordingly, Noble's Motion for Partial Summary Judgment will be denied.

Lake Charles, Louisiana, this 3rd day of November 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE