RECEIVED
IN LAKE CHARLES, LA.

NOV 16 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND & OIL COMPANY LLC | : | DOCKET NO. 2:09 CV 1100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORP. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on the issue of solidary liability and surface restoration obligations, filed by the defendant, Noble Energy, Inc. ("Noble") [Doc. 166]. The plaintiff, Sweet Lake Land & Oil Co. ("Sweet Lake") filed an Opposition [Doc. 213], and Noble filed a Reply [Doc. 252].

## FACTS

In this lawsuit, Sweet Lake seeks compensation for environmental damages to its property located in Cameron Parish, Louisiana (the "Property"). The defendants are oil and gas companies who conducted oil and gas exploration and production activities on the Property.[1] Sweet Lake alleges that the defendants' oil and gas operations contaminated the soil and groundwater on the Property with hazardous materials.[2] It seeks a judgment holding the defendants solidarily liable for damages in an amount necessary to evaluate and restore the Property, or in the alternative, an injunction compelling the defendants to do the same.[3]

---

[1] Third Am. Compl. ¶¶ 6 & 7 [Doc. 86].

[2] *Id.* ¶ 10.

[3] Fourth Am. Compl. ¶¶ 33 & 34 [Doc. 253].

1

Noble's predecessor, Samedan Oil Company ("Samedan"), acquired interest in six mineral leases on the Property: Record No. 60464 (the "Magnolia Lease"), Record No. 130913 (the "Skyline Lease"), and Record Nos. 180243, 181931, 183233, and 184799 (collectively, the "MCZ Leases").[4]

<u>Magnolia Lease</u>

Sweet Lake issued the Magnolia Lease to Magnolia Petroleum Company on January 2, 1951.[5] The lease covered, among other areas, Section 7 and a portion of the western half and the west half of the eastern half of Section 8, T12 S, R 6W.[6] On January 2, 1959, Magnolia assigned an undivided two-thirds of its interest in the south half of Section 7 and the north half of section 18 above 5400 feet to Samedan.[7] Magnolia's successors released the lease in 1977.[8]

<u>Skyline Lease</u>

On July 17, 1972, Sweet Lake issued a lease covering the north half of the northwest quarter and the west half of the northeast quarter of Section 8 T12S, R6W to Albert D. Miller.[9] Texas Eastern Skyline Oil Company ("Skyline") acquired an interest in the lease from Mr. Miller on October 13, 1972.[10] On December 1, 1986, Skyline assigned certain of its interest in the lease to

---

[4] Mem. in Supp. of Def.'s Mot. for Partial Summ. J. 1 [Doc. 166-1]. Sweet Lake alleges that Samedan also acquired an interest in a Surface Use Contract which contained restoration obligations. Because Noble is still trying to ascertain whether Samedan in fact acquired any interest in the Surface Use Contract, however, it does not seek partial summary judgment as to its obligations under that contract. Noble's Reply to Pl.'s Opp. to Noble's Mot. for Summ. J. 4 n.17 [Doc. 252].

[5] Def.'s Mot. for Partial Summ. J. Ex. 1, Magnolia Lease SL00777 [Doc. 166-2].

[6] *Id.*

[7] Def.'s Mot. for Partial Summ. J. Ex. 3, Conveyance from Magnolia to Samedan [Doc. 166-4].

[8] Def.'s Mot. for Partial Summ. J. Ex. 4, Release by Mobil Oil Corp. {Doc. 166-5]

[9] Def.'s Mot. for Partial Summ. J. Ex. 5, Skyline Lease [Doc. 166-6].

[10] Def.'s Mot. for Partial Summ. J. on Limited Ownership Interest Liability Ex. 12 [Doc. 167-15].

Samedan.[11] Samedan transferred its interest in the lease to the Faulconer Energy Joint Venture-1988 in 1989.[12]

The Skyline Lease provides "[t]he Lessee shall be responsible for all damage to improvements, timber, growing crops and irrigation wells caused by Lessee's operations. Lessee shall restore the surface of the land as near as reasonably practicable to its original condition following cessation of operations, if any, thereon."[13]

## MCZ Leases

Sweet Lake issued this chain of leases, which covered portions of Sections 7 and 8 of the Property, in 1983.[14] Samedan acquired interests in each of the leases between 1983 and 1987 by virtue of several assignments from both MCZ and intervening assignees.[15]

The MCZ Leases each provide that the "[l]essee shall be responsible . . . for all damages caused by Lessee's operations."[16] They further state that "[w]ithin ninety days after the completion or the abandonment of each well, the land surrounding said well shall be restored by Lessee to as near the condition existing prior to the commencement of Lessee's operations as is reasonably possible under the circumstances."[17]

---

[11] Def.'s Mot. for Partial Summ. J. Ex. 6 [Doc. 166-7].

[12] Def.'s Mot. for Partial Summ. J. Ex. 7 [Doc. 166-8].

[13] Def.'s Mot. for Partial Summ J. Ex. 11, Skyline Lease ¶ 8.

[14] Def.'s Mot. for Partial Summ J. Ex. 8, MCZ Leases [Doc. 166-9].

[15] Def.'s Mot. for Partial Summ. J. Ex. 10 [Doc. 166-11].

[16] MCZ Leases ¶ 17.

[17] MCZ Leases ¶ 8.

## ISSUES ON SUMMARY JUDGMENT

In its motion for partial summary judgment, Noble seeks to limit the extent of its potential liability. First, it seeks judgment as a matter of law that it cannot be held contractually liable for any damages to the Property caused by its predecessors in title.[18] Additionally, it argues that it cannot be held liable to Sweet Lake for any obligation under the Magnolia Lease because no privity of contract exists between Sweet Lake and Noble with respect to that lease.[19]

In the second part of its motion, Noble asks the court to construe the surface restoration obligations contained in each of the leases. Specifically, it seeks judgment as a matter of law that none of the leases require restoration of the Property beyond the conditions that existed at the time the leases were granted.[20]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

---

[18] Mem. in Supp. of Def.'s Mot. for Partial Summ. J. 1.

[19] *Id.* at 4-5.

[20] *Id.* at 1.

4

1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## ANALYSIS

### Appropriateness of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure was amended, effective December 1, 2010, to expressly provide for partial summary judgment. *See* Fed R. Civ. P. 56 advisory committee's note. It now states that a court shall grant summary judgment as to a claim or defense *or part of a claim or defense* where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

While summary judgment constitutes a final adjudication on the merits, *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 350 (5th Cir. 2001), partial summary judgment is not a final judgment, *Streber v. Hunter*, 221 F.3d 701, 737 (5th Cir. 2000). Rather, it is "merely a pre-trial adjudication that certain issues are established for trial of the case." Its purpose is to "root out, focus, and narrow the issues for trial." *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).

Sweet Lake argues that Noble's motion for partial summary judgment is procedurally deficient because it would not allow the court to dispose of any claim raised by Sweet Lake.[21] In

---

[21] Pl.'s Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 4-5 [Doc. 280].

5

particular, Sweet Lake argues that even if the court were to grant Noble's motion, it would be required to conduct additional proceedings to determine the amount of damage caused by Noble before ruling on the extent of Noble's obligation to restore the Property.[22]

Noble, however, has not asked for summary judgment on Sweet Lake's surface restoration claims in their entirety, nor has it requested that the court affix a dollar figure to its alleged liability. Rather, Noble merely seeks a pretrial determination that it cannot be held liable for damages caused by its predecessors in title and that none of the leases require it to restore the surface of the Property beyond the conditions that existed when Sweet Lake issued them. Amended Rule 56(a) expressly contemplates pretrial adjudication of particular issues within a claim or defense on a motion for partial summary judgment. *See also American Guaranty & Liability Ins. Co. v. Anco Insulation, Inc.*, No. 02-987, 2005 WL 1865552 (M.D. La., Jul. 29, 1985) (unpublished) (holding that a pretrial determination of the law applicable to the allocation of indemnity obligations among the defendant's multiple insurers was proper on a motion for partial summary judgment). Moreover, pretrial adjudication of Noble's motion would narrow and simplify the issues for trial. Accordingly, the court will proceed to consider the merits of the motion.

## Solidary Liability

### Magnolia Lease and Privity Defense

A mineral lease may be assigned or subleased in whole or part. La. R.S. 31:127. In Louisiana, a partial assignment occurs where the initial lessee transfers all of his interest in the mineral lease insofar as it affects a part of the leased property. *Spurlock Oil Co. v. Getty Oil Co.*, 278 So. 2d 851, 855 (La. App. 3d Cir. 1973) (quoting *Roberson v. Pioneer Gas Co.*, 173 La. 313, 137 So. 46 (1931)). If, however, the initial lessee retains an interest in the lease insofar as it affects the part of the leased property involved in the transfer, the transaction is considered a sublease. *Id. But see*

---

[22] *Id.* at 5.

6

*Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co.*, L.L.C., 46,153 (La. App. 2 Cir. 3/23/11); 63 So. 3d 159 (holding that the transfer of an undivided interest in a mineral lease was an assignment rather than a sublease).

Before the enactment of the Mineral Code, the Louisiana Supreme Court held that a lessor could not sue a sublessee to enforce any lease obligation because no privity of contract existed between the two. *Broussard v. Hassie Hunt Trust*, 231 La. 474, 91 So.2d 762 (1956). Article 128 of the Mineral Code, which was enacted on January 1, 1975, effectively overruled *Broussard*. Under Article 128, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations to the extent of the interest acquired. La. R.S. 31:128.

Noble maintains that because it acquired its interest in the Magnolia Lease in 1959, more than 15 years before the enactment of the Mineral Code, article 128 does not apply to the transaction. Accordingly, it argues that as a sublessee, it cannot be held liable to Sweet Lake because no privity of contract exists between them.

Sweet Lake counters that the Mineral Code should be applied retroactively. Article 214 of the Mineral Code provides that the Code shall apply to all mineral rights, including those that existed prior to its enactment, except to the extent that such application would "divest already vested rights" or "impair the obligation of contracts." The official comment to article 214 notes that the Louisiana Legislature enacted the Mineral Code in order "to create a single body of mineral law uniformly applicable, to the extent constitutionally permissible, to both existing and future mineral rights."

Thus, the question of whether article 128 applies to Noble's interest in the Magnolia Lease turns on whether has a vested right in its lack of privity defense. "When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees." *Prejean v. Dixie Lloyds Ins. Co.*, 94-2979, p. 3 (La. 9/15/95), 660 So.2d 836, 837. Accordingly, Louisiana courts have applied the mineral

7

code retroactively only where a particular issue has not been conclusively resolved to the contrary in pre-code jurisprudence. *Dore Energy Corp. v. Carter-Langham, Inc.*, 08-645 (La. App. 3 Cir. 11/5/08); 997 So. 2d 826, 830 (citing *Cox v. Sanders*, 421 So.2d 869 (La.1982); *Continental Group, Inc. v. Allison*, 404 So. 2d 428 (La. 1981)).

Noble has not provided, nor has this court has found any pre-Code decision addressing whether a sublessee could be held directly liable to a lessor to restore the lessor's property. Because pre-code jurisprudence therefore did not conclusively establish that Noble could not be held directly liable to Sweet Lake on any surface restoration obligation implicit in the Magnolia Lease, Noble has no vested right in the lack of privity defense. Accordingly, Article 128 should be applied retroactively in this case.

## Application of Article 128

Article 128 applies to make Noble directly liable to Sweet Lake for performance of obligations under all three leases "to the extent of the interest acquired." The parties dispute whether this means that a partial assignee or sublessee may be held directly liable to the lessor for obligations arising before the time of the transfer.

Specifically, Noble argues that "the language of article 128 of the Mineral Code, that the sublessee or assignee 'becomes responsible' to the lessor for the lessee's obligations, indicates that an assignee or sublessee is not solidarily liable for his assignor or sublessor's acts prior to the transfer."[23] This interpretation, Noble argues, comports with La. C.C. art. 2687, which provides that "the lessee is liable for damage to the [leased property] caused by his fault."[24]

Sweet Lake, on the other hand, argues that the phrase "becomes responsible" in Article 128 merely indicates that the assignee assumes responsibility for all lease obligations upon acquiring an

---

[23] Def.'s Reply to Pl.'s Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 5.

[24] *Id.* at 5-6.

8

interest in the lease.[25] It further contends that Samedan expressly assumed the restoration obligations contained in the Skyline and MCZ Leases in the agreements by which it acquired interests in those leases.[26] Alternatively, Sweet Lake argues that all parties holding interests in the leases must be held solidarily liable for the full measure of remediation damages because the obligation to restore property subject to a mineral lease is an indivisible obligation under the Louisiana Civil Code.[27] Because the court agrees that the obligation to restore property is an indivisible obligation, it need not address Sweet Lake's other arguments.

## Divisibility of the Restoration Obligation

The provisions of the Mineral are supplementary to the Louisiana Civil Code. La. R.S. 31:2. Accordingly, the Civil Code articles dealing with ordinary leases apply to oil and gas leases unless negated by a provision of the Mineral Code.

Article 1815 of the Louisiana Civil Code provides that "[a]n obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division." Louisiana Courts have held that an obligation is indivisible where the performance of the obligation cannot be divided or when partial performance would be of little or no use to the obligee. *See* 5 Saul Litvinoff, Louisiana Civil Law Treatise, Law of Obligations § 9.2 (2011). Accordingly, the obligation to build a swimming pool or a house is indivisible. *S & W Investment Co. v. Otis W. Sharp and Son, Inc.*, 170 So.2d 360 (1964).

Where an obligation is divisible, solidarity "shall not be presumed" but arises only from a clear expression of the parties' intent or from the law. La. C.C. art. 1796. Where an obligation is

---

[25] Pl.'s Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 5-6

[26] Pl.'s Surreply to Def.'s Mot. for Partial Summ. J. 4-6.

[27] Pl.'s Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 5-6

9

indivisible, on the other hand, all obligors must be held solidarily liable for the full performance of the obligation. La. C.C. art. 1818.

The obligation to restore the leased premises is, by its nature, an indivisible obligation. Property is either restored or it is not. A well cannot be partially plugged and abandoned. *See Muslow Oil and Gas, Inc. v. Rife Oil Properties, Inc.*, No. 427,920 c/w 427,921, 1st JDC, Caddo Parish, Louisiana ("The obligation of plugging and abandonment of wells is a joint obligation which is indivisible and, in accordance with Civil Code Article 1789, is a solidary obligation among mineral lessees and their assigns."). Likewise, hazardous materials placed into a pit must be removed, or the property remains polluted. Moreover, a partial restoration of property would be unlikely to satisfy either the surface owner or the state.

Noble argues that its obligation to restore the property is nevertheless made divisible by Louisiana Act 312 of 2006. Act 312 enacted La. R.S. § 30:29, which governs the procedures for the remediation of oilfields. The statute provides that if a court finds a party legally responsible for environmental damages, it must order the party to submit a remediation plan to the Louisiana Department of Natural Resources (the "DNR"). La. R.S. § 30:29(C)(1). The DNR reviews the submitted plans and approves the plan it determines to be the most feasible. *Id.* § 30:29(C)(3). Once the DNR approves a plan, the court must adopt the plan and order the responsible parties to fund its implementation. *Id.* § 30:29(C)(5).

Noble argues that because Act 312 converts any obligation it owes to physically restore the surface of the Property into an obligation to pay sums of money into the registry of the court, the obligation must be divisible because money judgments are plainly divisible by their nature. In Louisiana, however, the divisibility of a joint obligation depends on the divisibility of the object of the performance rather than on the remedy sought for breach of the obligation. *Berlier v. A.P. Green Industries, Inc.*, 01-1530 (La. 4/3/02), 815 So. 2d 39, 48. Thus, in *Lanier v. Capital Resources Group, Inc.*, 563 So. 2d 557; 1990 La. App. LEXIS 1581 (La. App. 4 Cir. 6/14/90), the court held

that the four defendants were solidarily liable to pay monetary damages for their breach of an indivisible obligation to enter into a real estate purchase and development agreement with the plaintiff. Likewise, in *S & W Inv. Co. v. Otis W. Sharp & Son, Inc.*, 247 La. 158; 170 So. 2d 360 (1964), the court awarded monetary damages for the defendants' breach of an indivisible obligation to build a swimming pool. Accordingly, although Act 312 makes the *remedy* for the breach of an obligation to remediate environmental damages the payment of money, it has no effect on the nature of the underlying obligation.

Alternatively, Noble argues that the language in Article 128 expressly limiting an assignee's liability "to the extent of the interest acquired" supersedes the Civil Code distinction between divisible and indivisible obligations. Louisiana courts, however, have recognized the indivisibility of certain obligations in mineral leases and have accordingly held partial assignees of mineral leases solidarily liable with their assignors for the full performance of those obligations. *See, e.g., Muslow Oil and Gas, Inc. v. Rife Oil Properties, Inc.*, No. 427,920 c/w 427,921, 1st JDC, Caddo Parish, Louisiana ; *Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co., L.L.C.*, 46,153 pp. 62-63 (La. App. 2 Cir. 3/23/11); 63 So. 3d 159, 179-181 (holding the assignee of an undivided 50% interest in a mineral lease directly liable to the original lessor for the full measure of damages resulting from the assignee's breach of an indivisible "Most Favored Nations" provision).

Thus, it appears that the language in Article 128 limiting the liability of a partial assignee or sublessee of a mineral lease "to the extent of the interest acquired" does not supersede the Civil Code provisions dealing with divisible and indivisible joint obligations. Rather, it simply makes clear that Article 128 does not make each owner of an undivided interest in a mineral lease liable for more than its share of the divisible obligations of the lease, such as the obligation to pay rent or royalty. Accordingly, Noble must be held liable *in solido* with its predecessors and successors in title for the full remediation of the property according to the terms each lease it acquired.

11

## Surface Restoration Obligations

Having determined that Noble must be held liable *in solido* with its predecessors in title to restore the Property according to the terms of each lease, the court now turns to the question of what each lease requires.

A mineral lease constitutes the law between the parties and defines their respective rights and obligations. La. R.S. 31:114; *Frey v. Amoco Production Co.*, 603 So. 2d 166, 172 (La. 1992). In construing the mineral lease, the general rules of contract interpretation apply. *Blanchard v. Pan-OK Production Co. Inc.*, 32,764 (La. App. 2d Cir. 4/5/00), 755 So.2d 376, *writ denied*, 00-1297 (La. 6/23/00), 765 So. 2d 1043.

The purpose of contract interpretation is to determine the common intent of the parties. La. C.C. art. 2045; *Id.* The words used in a contract are generally given their prevailing meaning unless they are words of art or have acquired a technical meaning. La. C.C. art. 2047. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made in search of the parties' intent. La. C.C. art. 2046.

### Magnolia Lease

The Magnolia Lease does not contain any explicit obligation to remediate the surface of the property affected by the lease. In *Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 04-0968 (La. 1/19/05), 893 So. 2d 789, 801, the Louisiana Supreme Court held that Mineral Code article 122 imposes an implied duty to restore the surface of property subject to a mineral lease to its original, pre-lease condition if, and only if, the lessee has exercised his rights under the lease unreasonably or excessively. Nothing in the opinion suggests that a lessee would have an implied obligation to restore the leased property beyond its pre-lease condition under any circumstances. Accordingly,

Noble cannot be held liable under the Magnolia Lease to restore the Property beyond the conditions that existed at the time that lease was granted.

## Skyline Lease

The Skyline Lease provides that "[t]he Lessee shall be responsible for all damage to improvements, timber, growing crops and irrigation wells caused by Lessee's operations. Lessee shall restore the surface of the land as near as reasonably practicable to its *original condition* following cessation of operations, if any, thereon."[28] The parties dispute the meaning of the term "original condition." Noble contends that "original condition" refers to the conditions that existed at the time the lease was granted.[29] Sweet Lake, on the other hand, argues that the use of the word "original" implies that the obligation extends to the conditions that existed before any oil and gas operations on the Property commenced.[30]

When read in isolation, the phrase "original condition" is reasonably susceptible to either interpretation. Viewing the clause as a whole, however, Noble's interpretation emerges as the most reasonable. The sentence preceding the surface restoration requirement makes the lessee responsible for damages to crops and fixtures "caused by" the lessee. The most reasonable reading of the surface restoration clause, therefore, is that it was likewise intended to make the lessee responsible for remediating damages to the surface caused by the lessee's operations or those of his assigns. Because the lessee could not cause damages that existed before his right of use began, the obligation to restore the surface must be limited to restoring the surface to the conditions that existed at the time the lease was granted.

---

[28] Def.'s Mot. for Partial Summ J. Ex. 11, Skyline Lease ¶ 8 (emphasis added).

[29] Mem. in Supp. of Def.'s Mot. for Partial Summ. J.

[30] Pl.'s Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 11.

13

MCZ Leases

The MCZ Leases each provide that the "[l]essee shall be responsible . . . for all damages caused by Lessee's operations."[31] They further state that "[w]ithin ninety days after the completion or the abandonment of each well, the land surrounding said well shall be restored by Lessee to as near the condition existing prior to the commencement of Lessee's operations as is reasonably possible under the circumstances."[32] The court finds that this language is clear. By their plain language, the MCZ Leases do not require restoration of the affected property beyond the conditions that existed at the time the leases were granted. Where a lease's words are clear and unambiguous, a court must enforce its explicit terms. *Brown v. Manhattan Life Ins. Co.*, 2001-0147, p. 4 (La. 6/29/01), 791 So. 2d 74, 77. Accordingly, Noble cannot be held liable under the MCZ Leases to remediate the property affected by those leases beyond the conditions that existed at the time they were granted.

## CONCLUSION

For the reasons stated herein, Noble's Motion for Partial Summary Judgment will be granted in part and denied in part. Insofar as the motion seeks a ruling that Noble cannot be held solidarily liable with its predecessors in title for damages caused by them, the motion will be denied. Insofar as the motion seeks judgment as a matter of law that none of the leases requires Noble to restore the surface of the Property beyond the conditions that existed at the time the leases issued, the motion will be granted.

Lake Charles, Louisiana, this 14 day of November 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[31] MCZ Leases ¶ 17.

[32] MCZ Leases ¶ 8.