UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND AND OIL COMPANY, LLC. | : | DOCKET NO. 2:09-CV-01100 |
| VERSUS | : | JUDGE MINALDI |
| EXXON MOBIL CORPORATION, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are motions for reconsideration filed by defendants Exxon Mobil Corporation (Exxon) [doc. 255] and Texas Eastern Skyline Oil Company (Texas Eastern) [doc. 257].  These motions request reconsideration of a Memorandum Order issued by this court, on September 1, 2011, which denied a motion by defendants to sever and stay these proceedings and granted a motion by plaintiff Sweet Lake Land and Oil Company (Sweet Lake) to stay the Louisiana Department of Natural Resources (DNR) Compliance Orders Nos. E-I & E-11-0635, E-I & E-11-0636, and E-I & E-11-0637.  *See* doc. 236, p. 1.

Since the issuance of this court's ruling, the State of Louisiana (Louisiana) has intervened in this suit.  Doc. 254.  Louisiana has also filed a motion for reconsideration of this court's order insofar as it stays the compliance orders issued by DNR.  Doc. 256. p. 1.  Additionally Louisiana Oil and Gas Association and Louisiana Mid-Continent Oil and Gas Association, have filed *amici curiae* briefs in support of the position taken by Louisiana and the defendants.  Doc. 313.

1

Hearing was held on November 8, 2011, on the motions before the court. Doc. 332. For reasons set forth below it is determined that the court's previous order should be and it is maintained.

The factual background and legal analysis contained in this court's order [doc. 236], dated September 1, 2011, are adopted and incorporated herein.

### I. *Arguments Presented for Reconsideration*

Exxon objects to this court's order staying the DNR compliance orders on three grounds: (1) the order exceeded a federal court's authority under the All Writs Act, 28 U.S.C. § 1651, by directly contravening Louisiana statutes on point; (2) the order ignored Fifth Circuit precedent prohibiting collateral attacks on decisions of the Louisiana Department of Natural Resources; and (3) the order exceeded a Magistrate's authority under 28 U.S.C. § 636(b). Doc. 255, p. 1.[1]

Exxon's first argument is that issuing a stay of the DNR compliance orders, under the power granted by the All Writs Act, was improper because this case does not present "exceptional circumstances" and the DNR compliance orders are not detrimental to this court's jurisdiction. Doc. 255, p. 3 (citing *Singh v. Duane Morris LLP*, 538 F.3d 334, 341 (5th Cir. 2008); *Williams v. McKeithen*, 939 F.2d 1100, 1104 (5th Cir. 1991)). Because Act 312 expressly states that the authority of DNR is not diminished, that DNR may independently respond to an inquiry or request by a landowner for investigation, and that no judgment or order may bar DNR from pursuing independent action regarding alleged environmental damage Exxon argues that the order issued by this court staying the DNR compliance orders is "plainly in error." Doc. 255, p. 3-4 (citing La. R.S. § 30:29 (B-C)). Furthermore, Exxon argues that this court's order

---

[1] While both Exxon and Texas Eastern Skyline Oil Co. have filed motions for reconsideration, the motion by Texas Eastern Skyline Co. simply adopts by reference the arguments made by Exxon and the State of Louisiana. *See* doc. 257, p. 1. Therefore, to avoid confusion, references will be made to Exxon's arguments contained in doc. 255 and to the State of Louisiana's arguments contained in doc. 256, att. 1.

frustrates the objective of Act 312 in that Act 312's objective is to ensure that environmental damage is remediated; which is exactly what the DNR orders seek to achieve. Doc. 255, p. 5.

Next, Exxon argues that the stay order issued by this court is an improper collateral attack on the DNR compliance orders. *Id.* at 6. Louisiana law provides that the exclusive venue for challenging a DNR compliance order is in Louisiana's 19th Judicial District Court. La. R.S. § 30:12. Therefore, Exxon argues that the stay orders issued by this court are impermissible collateral attacks on the DNR compliance orders. Doc. 255, p. 6 (citing *Trahan v. Superior Oil Co.*, 700 F.2d 1004, 1013-19 (5th Cir. 1983)).

In its third assignment of error, Exxon contends that the order issued by this court, although deemed a "stay" by this court, amounts to an injunction, which under 28 U.S.C. § 636(b)(1)(A) is not a permitted action by a Magistrate Judge. Doc. 255, p. 7. Because "the Magistrate purported to determine the motion, which was clearly beyond her authority," Exxon argues that the stay order is "a legal nullity." *Id.*

In addition to Exxon, the State of Louisiana has also submitted a brief in support of reconsideration. Doc. 256, att. 1. Similarly, Louisiana argues that this court's order rests on a flawed interpretation of Act 312. *Id.* at 5-8. Additionally, however, Louisiana argues that the principles of federalism and the 10th Amendment to the United States Constitution were violated by this court's order. *Id.* at 3-5.

Finally, the *Amici Curiae* has also submitted a brief supporting most of the arguments above. Doc. 313. Contained therein, the *amici* state that the All Writs Act is an extraordinary measure that cannot be used to undermine state law; which they contend has occurred with the issuance of this court's order. Doc. 313, p. 2-5. Also, they argue the order by this court

infringes on Louisiana's statutory scheme which vests DNR with broad power to issue and enforce compliance orders related to oil and gas impacts. *Id.* at 6-9.

## II.     Act 312 Suits

The basis of the instant suit, and the governing body of law for suits dealing with oilfield remediation in Louisiana, is Louisiana Revised Statute 30:29, better known as Act 312. Act 312 "provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of [DNR]," with the purpose of ensuring "that damage to the environment is remediated to a standard that protects the public interest." LA. REV. STAT. ANN. § 30:29(A).

To effectuate this purpose Act 312 provides that once a claim is made in district court alleging environmental damage from oilfield exploration or production, notice must be given to DNR. § 30:29(B)(1). At this juncture, the litigation is stayed for thirty days while DNR determines if they will intervene in the litigation. § 30:29(B)(1-2). Once the litigation resumes, regardless of whether DNR intervenes, the trial court must determine whether environmental damage has occurred and the liable party for such damage, either through admission or trial. § 30:29(C)(1).

Responsible parties are then to develop a remediation plan, which is submitted to DNR. *Id.* DNR then evaluates the plan and takes comments from all interested parties, including plaintiffs, and holds a public hearing on the issue. § 30:29(C)(2). Following evaluation DNR submits a plan it determines to be the most feasible to remediate the environmental damage and protect the health, safety and welfare of the people, back to the presiding court, along with an estimated schedule of costs. § 30:29(C)(2-4). Once submitted, the court shall adopt the DNR

approved plan unless a party is able to show that another plan is more feasible to secure the goals above. § 30:29(C)(5).

Once the court finalizes a remediation plan liable parties submit sufficient funds to carry out the plan directly into the registry of the court. § 30:29(D)(1). The court retains jurisdiction over the funds deposited and the liable parties. § 30:29(D)(4). If the court finds the deposited amount to be insufficient, it reserves the right on motion by a party, or its own motion, to require additional funds to be deposited in the registry by liable parties. *Id.*

However, Act 312 also states that, "[n]othing in this Section shall diminish the authority of [DNR] or the attorney general to independently bring any civil or administrative enforcement action. Nor shall anything in this Section preclude the department from independently responding in a timely manner to an inquiry or request by a landowner for investigation." LA. REV. STAT. ANN. § 30:29(B)(2). Further,

> [a]ny judgment or order in any litigation to which this Section applies shall be without prejudice to any independent civil or administrative action by [DNR] or the attorney general regarding any environmental damage alleged therein. No such judgment or order in such litigation may bar [DNR] or the attorney general pursuant to R.S. 13:4231 et seq., or otherwise from pursuing any independent civil or administrative action regarding environmental damage alleged therein, regardless of whether [DNR] or the attorney general has intervened.

§ 30:29(B)(3).

According to the defendants the cited provision leaves this court without any authority whatsoever to issue orders that may somehow "impinge" on the authority of the state to issue its compliance orders or otherwise govern the areas of consideration delegated to it by the Louisiana legislature, which areas of concern would include remediation. According to the defendants this

court has no authority whatsoever to involve itself in any manner with how and when the DNR chooses to exercise its seemingly imperialistic rights to act in the areas of oil and gas.

Not much jurisprudence exists since the enactment of Act 312 that could guide this court in determining what balance of powers or authority was envisioned by the Louisiana legislature when it chose to adopt the act. What is very clear for the act's adoption, however, is that the Louisiana legislature intended that the courts should and would have involvement in remediation cases. The act itself clearly sought to preserve the integrity of the administrative process reserved to the state but it also clearly intended to involve the court system in the process of remediation. This court has now been challenged to address the issue of how and to what extent the authority of the court and the administrative process are to interact and who, in the end, has the final authority.

### III.  *The Instant Act 312 Suit*

We are only concerned at this time only with the situation before this court. This suit was filed in this court on July 1, 2009. Doc. 1. As required by Act 312 Sweet Lake notified DNR of the pending suit but DNR did not intervene at that time. *See* doc. 133, att. 2. On January 15, 2010, Sweet Lake sent soil and water sampling results to DNR, again as required by Act 312. Doc. 133, att. 3; LA. REV. STAT. ANN. § 30:29.1. On May 13, 2010, this court set October 17, 2011 as the trial date. Doc. 63.

On or about May 31, 2011, DNR issued three compliance orders: (1) Order No. E-I & E-11-0635 to Exxon; (2) Order No. E-I & E-11-0636 to Texas Eastern Skyline Oil Co.; and (3) Order No. E-I & E-11-0637 to Lapis Operating Inc.[2] Doc. 133, att. 4. The compliance order sent to Exxon directed it to implement a plan by September 1, 2011, to properly dispose of all waste on a segment of the property at issue in this litigation. Doc. 133, att. 4, p. 1. The other

---

[2] Lapis Operating Inc. is a third-party defendant in this suit.

two compliance orders require Texas Eastern Skyline and Lapis Operating, respectively, to "[s]ubmit a plan for assessing soil and groundwater conditions" to DNR regarding, again, a segment of the property at issue in this litigation. *Id.* at 3-6. Disposition of waste and assessment of soil and groundwater conditions of the property are matters currently before this court for consideration.

Because of the timing of the issuance of the orders as it related to the impending trial in this matter and in light of the fact that Sweet Lake had expended significant resources in preparation for the pending trial on the condition of the proper as it then stood, this court granted a request by Sweet Lake to stay the compliance orders issued by the DNR. We found that Act 312 grants primary jurisdiction over remediation issues to the court, not the DNR, and that in this particular case the actions of the DNR frustrated that jurisdiction. Doc. 236, p. 5-13. The actions mandated by the DNR would render meaningless the preparatory work of the experts as it related to this trial as those experts would be required to return to the site and reevaluate and issue new reports, all at great expense of funds to the litigants and time to this court.

The primary argument presented on reconsideration[3] was that this court's order staying the DNR compliance orders ran afoul of the provisions in Act 312. Specifically, Exxon, the State of Louisiana, and the *amici* argue that this court's order does not comply with the above quoted sections of Act 312 which prevent the diminishing of DNR's authority to bring civil or administrative enforcement action, and prevent any judgments from barring the DNR's ability to independently bring such actions in response to alleged environmental damage. Those challenging this court's earlier ruling maintain that the quoted language preserves two separate and distinct tracks for dealing with contaminated land in Louisiana: the judicial track for private

---

[3] Arguments on reconsideration were augmented by the State of Louisiana which chose to intervene following this court's ruling and also by two industry associations who sought and were granted leave to file *amicus* memoranda.

claims and the administrative track which serves the public interest. In its brief Louisiana goes to great lengths to differentiate between the plaintiff's "claim" brought under Act 312 for remediating environmental damage and the issuance of compliance orders by DNR to protect the people and property of Louisiana. *See* doc. 256, att. 1, p. 6-8.

### IV.     *Analysis*

While arguments of defendants, *amici* participants, and Louisiana are compelling, this court is simply unable to fathom that the litigation process set forth in Act 312 to separately, wholly distinct, and never intended to cross paths with the administrative functions of the State of Louisiana when dealing with remediation issues. And as we have already held and note above, this court finds that the language of the Act bestows primary jurisdiction over the issue of remediation with the court.[4] Contrary to assertions made by those seeking reconsideration of the court's previous ruling, Act 312 does not limit the concern of this court to "private" claims. Rather Act 312 is a mandate from the legislature setting forth a judicial procedure "to ensure that damage to the environment is remedied to a standard that protects the public interest." LA. REV. STAT. ANN. § 30:29(A).

For us to hold that remediation of property is properly the subject for consideration by this court under Act 312 but then to find that the DNR may, at the exact same time, issue orders concerning remediation on the exact same property during the litigation process through a separate, parallel process would lead to absurd results. Opponents of this court's previous ruling were asked a very simple question at oral argument and that was whether this court's final judgment on responsibility for remediation and the plan for that remediation would have any

---

[4] *See also Duhon v. Petro*, 34 So.3d 1065, 1067 (La. App. 3 Cir. 2010) (holding that primary jurisdiction over oilfield remediation claims is vested in the trial court, not DNR; and that the trial court does not have discretion to refer litigation to DNR prior to adjudication on the issues of environmental damages and liability) and John B. Shortess, *Act 312 Jurisdiction Over Oilfield Site Remediation Claims*, 58 La. B.J. 52 (2011).

preclusive effect on the ability of Louisiana to order a different entity to perform different tasks that it found necessary to effectuate remediation. Opponents to the court's previous ruling indicated that, in their opinion, the final judgment of this court would have absolutely no effect on the ability of Louisiana to go on to the property once this court had completed its tasks under the act and to exercise its will (subject to review under the procedures pertaining to the DNR) concerning remediation. That is indeed absurd.

This "dual track" theory promotes waste of significant time and money, at least in the present situation. This court cannot assume that the Louisiana legislature in its enactment of Act 312 intended such a result and we find that it did not. Even conceding the language of the act that preserves the authority of the DNR to act, we must conclude that the Louisiana legislature intended that the authority of the court would prevail in cases such as here where that authority collides with the authority of the DNR in its administrative tasks

Therefore, it is the opinion of this court that the best interpretation of Act 312 is one where there is a level of cooperation between DNR and the courts. This court can envision emergency situations that would call for swift action by DNR in remediation situations and certainly there is not always civil litigation pending to deal with remediation issues. However, where no emergency is present and an Act 312 trial is imminen,t DNR compliance orders issued on the eve of trial become a hindrance to the authority and obligation of the court to proceed and a stay of those "Johnny-come-lately" orders is totally appropriate. The DNR compliance orders in this case pose an obstacle to this court's ability to timely and orderly decide the Act 312 suit before it and a stay of those orders is within the province of this court.

Neither does the stay of the compliance orders of this court "bar" DNR from acting in its administrative capacity as suggested by opponents of the stay. Nor does the stay challenge the

validity of the DNR orders. A stay merely directs DNR to hold off with enforcement of its compliance orders until the culmination of the Act 312 trial. While such an order may not be commonplace it is not unheard of. *See, e.g., Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So.2d 475, 484-85 (La. 1991) (the Louisiana Supreme Court found that a DNR hearing and determination in an oilfield remediation case "infringed judicial authority" because the matter was currently under advisement in the trial court. Citing article V, section 2, of the Louisiana Constitution, the Court ordered a new, post trial, DNR hearing which fully considered the court record).

For the above reasons, it is apparent to this court that exceptional circumstances have presented themselves in this case and a stay of the DNR compliance orders is warranted to protect the timely and orderly administration of this court's jurisdiction under Act 312. Therefore, this court finds that it was, and is, necessary to stay the DNR compliance orders to protect this court's jurisdiction by the powers conferred to this court thru the All Writs Act, 28 U.S.C. § 1651.

The remaining complaints for which the opponents of our order seek reconsideration are also meritless.

Exxon argues that this court's order violates the principles of federalism and the 10th Amendment to the United States Constitution. As a federal court, sitting in diversity, and applying state law, there is no federalism or 10th Amendment concern. Exxon acknowledged at oral argument that there would be no bar to a state court enjoining DNR action (other than a bar that would be posed by the arguments discussed above). If a state court considering litigation under Act 312 could issue a stay, no consideration of federalism could preclude this court, sitting in diversity, from doing the same.

Opponents of this court's order also suggest that a stay is an impermissible collateral attack on the DNR compliance orders; this court finds that they are meritless. That issue was handled in our original opinion and remains unchanged. See Doc. 236, p. 11-12.

For the first time in the requests for reconsideration the opponents have suggested that issuance of a stay is beyond the statutory authority allotted to magistrate judges. We find no merit in this position as a stay, which is not an injunction, does not exceed the powers of a federal magistrate. *See* 28 U.S.C § 636(b)(1)(A); *Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 1757-58 (2009); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010).

### V.   *Conclusion*

For the foregoing reasons, upon reconsideration of this court's order [doc. 236] staying the DNR compliance orders Nos. E-I & E-11-0635, E-I & E-11-0636, and E-I & E-11-0637, it is determined that said order should be **MAINTAINED**.

THUS DONE this 15th day of December, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE