RECEIVED
IN LAKE CHARLES, LA.
JAN 03 2012
TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| THE SWEET LAKE LAND & OIL COMPANY LLC | : | DOCKET NO. 2:09 CV 1100 |
| VS. | : | JUDGE MINALDI |
| EXXON MOBIL CORP. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on the issue of punitive damages, filed by the defendant Noble Energy Inc. ("Noble") [Doc. 168]. The plaintiff, Sweet Lake Land & Oil Co., LLC ("Sweet Lake") filed an Opposition [Doc. 212], and Noble filed a Reply [Doc. 248].

## FACTS

This lawsuit arises out of environmental damages to Sweet Lake's property located in Cameron Parish, Louisiana (the "Property"). Sweet Lake's predecessor in interest, Sweet Lake Land & Oil Co., Inc., granted a series of mineral leases affecting the Property.[1] On July 1, 2009, Sweet Lake filed this lawsuit against various companies who held interest in these leases or who conducted oil and gas exploration and production activities on the Property, alleging that the defendants contaminated the Property in connection with their oil and gas operations.[2] Its prayer for relief includes a claim for punitive damages.[3]

---

[1] *See* Noble's Statement of Uncontested Material Facts ¶ 8 [Doc. 168-15].

[2] Fourth Am. Compl. ¶¶ 6-8 [Doc. 253].

[3] *Id.* ¶ 33.

1

Sweet Lake alleges that Samedan drilled or operated three wells on the Property between 1959 and 1988, including the Sweet Lake No. 2 (Serial No.144409) in Section 8, T12S, R6W, the Sweet Lake No. 1 (Serial No. 75866) and No. 3 (Serial No. 189273) in Section 7 T12S, R6W.[4] It further alleges that, in connection with drilling and operating these wells, Samedan disposed of hazardous materials in unlined earthen pits.[5]

Noble has moved for partial summary judgment dismissing Sweet Lake's claim for punitive damages on the grounds that Sweet Lake has failed to produce any evidence that Samedan engaged in conduct for which punitive damages may be awarded.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

---

[4] *Id.* ¶ 8.

[5] Pl.'s Mem. in Opp. to Noble's Mot. for Partial Summ. J. 2.

2

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Id.*

## ANALYSIS

Former Civil Code article 2315.3 provided for the award of exemplary damages where a "plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous substances." In order to recover punitive damages under article 2315.3, a plaintiff must prove that the defendant engaged in wanton or reckless conduct by showing that the defendant acted in disregard of a high and excessive degree of danger known to the wrongdoer or apparent to a reasonable person. *Billiot v. B.P. Oil, Co.*, 93-1118, pp. 16-17 (La. 9/29/94), 645 So. 2d 604, 613. Determination of whether conduct was reckless is a question of fact. *Quick v. Myers Welding and Fabricating, Inc.* 94-282 (La. App. 3d Cir. 12/7/94), 649 So. 2d 999, 1003.

Sweet Lake argues that Samedan's use of unlined pits to dispose of brine and other oilfield wastes generated from its wells supports an award or punitive damages under former La. Civ. Code art. 2315.3. Specifically, it alleges that the oil and gas industry knew as early as 1930 that the use of unlined earthen pits to store brine and oilfield wastes often resulted in contamination and that Samedan showed a conscious indifference to this risk by failing to evaluate whether its pits were properly constructed and maintained.[6] Accordingly, Sweet Lake

---

[6] Pl.'s Mem. in Opp. to Noble's Mot. for Partial Summ. J. 2.

contends that Noble's alleged storage of toxic substances in unlined pits constituted wanton and reckless behavior for which punitive damages may be awarded under former La. Civ.Code art. 2315.3.

Noble counters by asserting that even if disposing of oilfield wastes in unlined pits would support a claim for punitive damages, Sweet Lake has failed to produce any competent evidence that Samedan did so during the time period for which punitive damages may be awarded.[7] The court agrees. In its opposition to Noble's Motion, Sweet Lake relies exclusively on a declaration submitted by its expert, Charles Norman and on aerial photographs of the Property to establish that a genuine issue of material fact exists as to whether Samedan disposed of hazardous materials in pits.[8] Both fail to supply "specific facts" from which a reasonable factfinder could conclude that Samedan disposed of hazardous substances in pits between 1984 and 1988. *See Tubacex*, 45 F.3d at 954.

It is well established that unsupported allegations are insufficient to defeat summary judgment. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment, an expert opinion must contain more than mere conclusions. *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993). Accordingly, the Fifth Circuit has held that "[f]or the purposes of summary judgment under Fed.R.Civ.P. 56(e), an expert affidavit must

---

[7] Former Article 2315.3 became effective on September 4, 1984 and was repealed on April 16, 1993. *Bujol v. Entergy Services, Inc.*, 2003-0492 at 8 n.6 (La. 5/25/04), 922 So. 2d 1113, 1121 n.6. The Louisiana Supreme Court has held that it cannot be applied retroactively. *See Anderson v. Avondale Indus., Inc.*, 00-2799 at 20-21 (La. 10/16/01); 798 So. 2d 93, 102. Accordingly, it applies only to conduct that occurred between September 4, 1984 and April 16, 1993. *Id.*

[8] *See* Pl.'s Opp. to Noble's Mot. for Partial Summ. J. 4-5.

include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion." *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 331 (5th Cir 1998).

In his declaration, Mr. Norman states: "Based on my experience in and familiarity with oil and gas operations, my review of industry literature, and my review of the referenced documents, it is my opinion that the contamination found by Approach on the Property was caused by Samedan's storage and disposal of wastes in unlined pits."[9] He goes on to assert that "Samedan exhibited a conscious indifference to [the risk of contamination] by making no efforts to evaluate whether the pits were properly constructed, maintained, or leaking, and by continuing to store or dispose of hazardous substances in the pits until 1988."[10]

His declaration, however, provides no explanation for how he arrived at his conclusions that the contamination allegedly found on the Property was caused by Samedan's use of unlined pits, that Samedan continued to use the pits through 1988, and that in doing so, Samedan acted with a "conscious indifference" to the risk of contamination. Accordingly, it is insufficient to create a genuine issue of material fact as to whether Noble disposed of hazardous materials in pits between 1984 and 1988. *See Miller Exploration Co. v. Energy Drilling Co.*, 130 F. Supp. 2d 781, 785 (W.D. La. 2001) (holding that an expert affidavit listing the expert's qualifications, reciting materials the expert reviewed, and then stating findings in a conclusory fashion was not acceptable Rule 56(e) evidence).

Likewise, the aerial photographs provided by Sweet Lake fail to create a genuine fact issue regarding Samedan's alleged use of pits. Even if the photographs establish that the pits

---

[9] *See id.* Ex. B, Declaration of Charles Norman ¶ 8.

[10] *Id.* ¶ 11.

continued to contain hazardous materials until they were closed in 1990, they provide no information concerning how or when those materials came to be there.

## CONCLUSION

Because Sweet Lake has failed to present any evidence that Noble engaged in any conduct for which punitive damages may be awarded, Noble's Motion for Partial Summary Judgment will be granted.

Lake Charles, Louisiana, this __3__ day of _____ 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE